STATE OF HAWAII, Plaintiff-Appellee, *v.* JAMES FRANKLIN MESSAMORE, Defendant-Appellant

NO. 7854

CRIMINAL NO. 53222

JANUARY 11,.1982

HAYASHI, C.J., PADGETT AND BURNS, JJ.

*Per Curiam.* James Messamore appeals his convictions for rape in the first degree[1] and sexual abuse in the first degree[2] and argues to this court the following points of error: (1) that the court erred in finding that the child victim was a competent and qualified witness; (2) that the court erred in admitting into evidence a stained pillow-case and a half-empty bottle of baby oil; (3) that the court erred in

---

[1] HRS § 707-730 *Rape in the first degree.* (1) A male commits the offense of rape in the first degree if:

(a) He intentionally engages in sexual intercourse, by forcible compulsion, with a female and:

(i) The female is not, upon the occasion, his voluntary social companion who had within the previous twelve months permitted him sexual intercourse; or

(ii) He recklessly inflicts serious bodily injury upon the female; or

(b) He intentionally engages in sexual intercourse with a female who is less than fourteen years old and he recklessly inflicts serious bodily injury upon the female.

[2] HRS § 707-736 *Sexual abuse in the first degree.* (1) A person commits the offense of sexual abuse in the first degree if:

(a) He intentionally, by forcible compulsion, has sexual contact with another or causes another to have sexual contact with him; or

(b) He intentionally has sexual contact with another person who is less than fourteen years old or causes such a person to have sexual contact with him.

permitting the parents under the *res gestae* (excited utterances) exception to the hearsay rule to testify as to what the child told them of the incident some ten days after its occurrence; and (4) that the court's refusal to fully ascertain the circumstances surrounding a possibly prejudicial conversation overheard in the hallway by one of the jurors during a trial recess violated the appellant's constitutional right to a fair trial by an impartial jury.

On the basis of the facts and circumstances of this case and applicable law, we find no merit to appellant's contentions (1) and (2). Issues (3) and (4) pose more difficult questions; and for the following reasons, this case will be reversed and remanded for a new trial.

The facts reveal that on May 26, 1979, the Messamore family (the appellant, his wife, and three children) arrived at the Nathan home around 10:00 in the morning. Mrs. Nathan was at home with her three children, and Mr. Nathan was at work. Apparently, Mrs. Nathan and Mrs. Messamore were friends, having grown up together in the Philippines.

At some point it was decided that the women were going to do their laundry that day so the appellant drove the women to a nearby laundromat and returned to the Nathan home to watch the children. As the children played outside, the appellant had a few beers, watched T.V., and slept for a while. It was alleged by the child (who was then three years old) that during this time period when the women were at the laundromat, the appellant took her into her upstairs bedroom, closed the door, and committed the offenses alleged.

Q. You said that Oliver and Michael's daddy put his butoto in your pikpik?[3]
A. Yes.
Q. Did he put it anyplace else?
A. Yes.
Q. Where?
A. In my pikpik.
Q. Did he put his butoto anyplace else?

---

[3] Oliver and Michael are the children of the appellant. The child understood butoto to mean the penis and pikpik meant the vagina.

A. Yes.
Q. Where?
A. In my pikpik.
Q. Okay, Now, did he do anything else to your pikpik?
A. Yes.
Q. What else did he do?
A. He put the oil and the finger.
Q. Did he put the finger in your pikpik?
A. Yes.

(Footnote added.)

The record does not reveal the precise time these events occurred, but appellant at some point in the afternoon was awakened by one of the children to answer a phone call from the women requesting that he pick them up. He and the child drove to the laundromat, picked up the women, and returned to the Nathan home. Supper was prepared; they ate, played cards, and subsequently Mr. Nathan arrived home. The couples continued playing cards and drinking until late in the evening. Due to his intoxicated condition, it was decided that the Messamores would remain overnight to permit the appellant to sober up. They did so and left the next morning.

Between May 26 and June 4, the child made no mention of the event to her parents but did complain of pain while urinating. Finally, on June 4, after complaining about her fear of urinating, the child urinated while standing on the stairs. The mother was in the process of spanking her when the child related to her the events of May 26. The father, upon hearing the child detail these events to her mother, returned to the living room and continued watching television. At trial, the court admitted the parents' hearsay testimony, over appellant's objection, as an excited utterance under the *res gestae* exception to the hearsay rule. The court also admitted into evidence, over appellant's objection as irrelevant, a stained pillowcase and half-empty bottle of baby oil taken from the child's room two weeks after the incident occurred. There is no indication in the record that the prosecutor attempted to have the blood and semen stains analyzed to determine whether they would match that of the appellant (although there was testimony that such analysis could have been done), and the testimony established only that "some" animal's blood and "some" semen were on the pillowcase.

Then, during deliberations, the following occurred in chambers:

THE COURT: Note the presence of counsel.

At 3:27 we received the following message from Paul Patterson, jury foreman:

"Judge Chun, one juror overheard a conversation in the hallway that may have affected her ability to decide this case impartially. What should we do?"

MR. TATEISHI: Okay, at this point, for the record, with that prima facie evidence of impartiality, I'm going to ask for a mistrial.

THE COURT: I think before we can do that, we have to examine this juror to find out what she heard and whether or not she can still be fair and impartial.

MR. TATEISHI: Yes, your Honor, just for the record.

THE COURT: For the record.

MR. TATEISHI: Yes.

THE COURT: All right, Kimo, will you bring that juror in?

\* \* \*

THE COURT: Mrs. Watson, it's my understanding you overheard a conversation in the hallway.

THE JUROR: Yes. But that was before I was selected.

THE COURT: How long was that?

THE JUROR: That was the first day.

THE COURT: Who was the conversation between?

THE JUROR: That's why I said I wasn't sure.

THE COURT: All right, one second. Did you pass on what you overheard to the rest of the jury?

THE JUROR: No.

THE COURT: All right.

THE JUROR: You're the only one.

THE COURT: Okay. Do you still think you can be fair and impartial?

THE JUROR: Yes. I tell you why, Judge, that I wasn't — I mean, I had to come out — was because we were discussing it. And it seems like I was more inclined to believe. That's when it came up.

THE COURT: I don't want you to tell me how you feel about the case. What I do want to know is whether or not you can still be

fair and impartial in deciding this case and deciding it only on the evidence that you heard from the witness stand. You can?

THE JUROR: Yes, I can.

THE COURT: Mr. Tateishi.

MR. TATEISHI: Your Honor, can I ask you a question? Is it permissible to go into what she overheard?

THE COURT: If it has not been passed on to the rest of the jury, I don't even want to know it myself. And if she can still be fair and impartial and decide this case on the witness stand, I think it should be left at that. If she doesn't remember who she heard it from —

THE JUROR: No, because when I turned to look, there were all these people sitting. Now, if you don't know a person, the name, I mean, the voice won't —

THE COURT: And were these people later witnesses in this case?

THE JUROR: Well, it's some of them with the defendant sitting there. And then I don't know whether they were students. I saw them sitting in the back. Like I said, I know this didn't come from — judging from the conversation, it couldn't come from —

THE COURT: Any of the witnesses?

THE JUROR: Yes. In other words —

THE COURT: All right, Mr. Tateishi.

MR. TATEISHI: Well —

THE JUROR: Witnesses had nothing to do with it.

MR. TATEISHI: Well, if you believe you can be fair and impartial —

THE JUROR: I promise and I swear.

MR. NIP: Your Honor, the State feels that Mrs. Watson can be fair and impartial.

THE COURT: All right, thank you.

(The juror was excused from the chamber conference)

THE COURT: All right, I'm going to send back the following message: The Court is satisfied that the juror can be fair and impartial. You will continue with your deliberations.

MR. TATEISHI: Okay.

MR. NIP: The State has no objections to that instruction.

MR. TATEISHI: First of all, I'd like to again ask for a mistrial to protect for the record. I believe that if there is any kind

of outside influence other than the evidence produced at trial, the appearance of that, along with the testimony that this woman did hear something about the trial, pertains to proceedings. And I will ask for a mistrial.

THE COURT: All right. The Court will overrule — deny the motion on the basis of what the juror has stated for the record.

The juror was sent back to continue deliberating, over defense counsel's objection and motion for mistrial.

Appellant contends that it was error for the court to permit the parents' hearsay testimony as part of the *res gestae*.

Hearsay statements are defined as out of court statements offered in evidence to prove the truth of the matter asserted therein. They are inadmissible as evidence of the thing asserted unless the statement falls within one of the rule's many exceptions. *Res gestae*, or the thing in action, is one of these exceptions. It encompasses spontaneous declarations (e.g., excited utterances) made at or near the event while the declarant is under the stress of excitement caused by the event or condition. Federal Rules of Evidence Rule 803(2); Hawaii Rules of Evidence Rule 803(2) (1981); *Territory v. Kinoshita,* 38 Haw. 335 (1949); *State v. Antone,* 62 Haw. 346, 615 P.2d 101 (1980). The crucial element that buttresses the reliability of such declarations is their spontaneity; and so the authorities and the case law are concerned that the time span between the event and the making of the statement is short — very short.

> Fundamentally, the sound rule is that, in order for statements to be admitted as part of the *res gestae,* the statements must be reasonably contemporaneous with the event to which they relate, i.e., they must be such as to have been proximately caused by the exciting influence of the event without opportunity for deliberation or influence.

*Territory v. Lewis,* 39 Haw. 635 (1953).

On the question of the requirement that the utterance must be fairly contemporaneous with the event, Wigmore has stated:

> The declaration, therefore, may be admissible even though subsequent to the occurrence, provided it is near enough in time to allow the assumption that the exciting influence continue.

VI J. Wigmore, *Evidence,* § 1756 at 231 (Chadbourn rev. ed. 1976). Where the witness is a child victim, the courts have been relatively

lenient in extending the time in which the stress of excitement remains so that the *res gestae* exception remains viable. *U.S. v. Nick,* 604 F.2d 1199 (9th Cir., 1979); *Jones v. U.S.,* 231 F.2d 244 (D.C. Cir., 1956); *Territory v. Kinoshita,* 38 Haw. 335 (1945); *Lancaster v. People,* 615 P.2d 720 (Colo. App. 1980); *State v. Bloomstrom,* 529 P.2d 1124 (Wash. App. 1974).

In the cases cited, hearsay testimony of the parents was admitted as either excited utterances or part of the *res gestae.* In each instance, the children related the details of the incidents *immediately* upon being *reunited* with their parents; and the time span between the incident and the statements to the parents did not exceed a few hours. In the case before us, ten days elapsed between the time of the incident and the child's statement to her parents. During that time period, the normal family routine continued, save for the child's complaints of pain while urinating.

The State argues that these statements made to the parents ten days later still qualify as part of the *res gestae* exception to the hearsay rule. They urge us to adopt the rule applied in a line of Michigan cases holding that in cases involving sexually abused children, hearsay testimony can be admitted as part of the *res gestae* despite a lapse of time between the actual incident and complaint to a third party if the delay is explained. *People v. Bonneau,* 323 Mich. 237, 35 N.W.2d 161 (1948); *People v. Bernor,* 115 Mich. 692, 74 N.W. 184 (1898); *People v. Glover,* 71 Mich. 303, 38 N.W. 874 (1888); *People v. Davison,* 12 Mich. App. 429, 163 N.W.2d 10 (1968). However, even in these cases cited by the State, applying a very liberal standard, the maximum lapse of time in which the *res gestae* exception was allowed to apply was two weeks, and the common element in all the cited cases as the justification for relaxation of the rule was the child's expressed fear of the defendant. In the case at bar, the evidence presented is simply not sufficient to withstand the appellant's hearsay objection on the basis urged upon us.

Q. (By Mr. Nip) What did he do?
A. (The Child) He put the oil and the finger.
Q. Did he put the finger in your pikpik?
A. Yes.
Q. Okay. Were you afraid?
MR. TATEISHI: Your Honor —
A. No.

MR. TATEISHI: That's allright. Withdraw my objection.

We are not inclined to adopt the Michigan rule as urged by the State. Hawaii law regarding the *res gestae* exception is rather clearly set out in *Territory v. Lewis, supra;* and *Territory v. Kinoshita, supra.* The evidence presented clearly does not fall within the *res gestae* exception to the hearsay rules. A child's statement to a parent detailing rape and sexual abuse made ten days after the event occurred is not part of the *res gestae.* And when during that ten-day period, the normal household routine was carried on, and the "excited utterance" was made not in response to the actual event in question, but in response to fear of a spanking for wetting one's pants, an even stronger case for exclusion is shown.

While the statements clearly do not qualify as part of the *res gestae,* they may have been admissible as prior consistent statements. *See* Rules 613(c) and 802.1(2), Hawaii Rules of Evidence, Chapter 626, Hawaii Revised Statutes, effective January 1, 1981; *State v. Altergott,* 57 Haw. 492, 559 P.2d 728 (1977). In a recent case, we said:

> A prior consistent statement of a witness who has merely testified on direct examination, without impeachment, is ordinarily excluded because it is unnecessary and valueless. [Citation omitted.] If the witness' credibility is impeached by an express or implied charge that his or her testimony is of recent fabrication, the product of bias, corrupt influence, contrivance to falsify, or want of capacity to observe or remember, further analysis is required. . . .
>
> In such a situation, the applicable principle is that the prior consistent statement may not be used to refute the impeachment unless the consistent statement was made before the source of the bias, interest, influence or incapacity originated. . . . As a foundation to the admission of the prior consistent statement, the party seeking admission must establish that the statement was made at a time prior to the existence of motive, interest or fabrication.

*Matter of Adoption of Male Child,* 1 Haw. App. 364, 619 P.2d 1092, 1098 (1980).

However, we need not decide that question because reversal of the conviction is mandated on the issue of whether appellant's constitutional right to be fairly tried by an impartial juror was violated by jury taint.

A fair trial by an impartial jury is required as a basic protection of the criminally accused in a state prosecution by both the United States Constitution and our Hawaii State Constitution.[4] Inherent in this requirement is that a defendant receive a trial by an impartial jury free from outside influences. *State v. Keliiholokai*, 58 Haw. 356, 569 P.2d 891 (1977). On this question, the United States Supreme Court has stated unequivocally that:

> In a criminal case, any private communication, contact, or tampering, directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, . . . The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant.

*Remmer v. United States*, 347 U.S. 227, 74 S.Ct. 425 (1954). *See also, Remmer v. United States*, 350 U.S. 377, 76 S.Ct. 425 (1956); *State·v. Pokini*, 55 Haw. 640, 526 P.2d 94 (1974); *State v. Keeliiholokai, supra.*

In *State v. Keliiholokai, supra,* the Hawaii Supreme Court held that when it has been brought to the attention of the trial court that there was printed in the newspaper a substantially prejudicial news account (a story describing defendant's prior convictions), the trial court must determine whether any jurors had read the prejudicial publicity and, if so, it must determine the effect of the publicity upon the affected jurors. It did not say what the trial court should do in the event an affected juror affirms his or her ability to be fair and impartial. However, it indicated that the trial court is duty bound to exercise its discretion to take appropriate measures to assure a fair trial and that the appellate court is duty bound, giving due deference to the trial court's discretion, to make an independent examination of the totality of the circumstances to determine if there are any indications that the defendant's trial was not fundamentally fair.

The answer to the question not answered in *Keliiholokai* is contained in *State v. Pokini, supra.* In that case the Hawaii Suprme Court held that a juror's statement of self-assessed subjective impartiality is not sufficient to discharge the heavy burden on the government to rebut the presumption of prejudice. *State v. Pokini, supra,* at 644.

---

[4] Hawaii State Constitution, article I, § 14.

Given the mandates of the United States Supreme Court and the Hawaii Supreme Court, we are bound to conclude that the trial court's failure to inquire into the totality of the circumstances surrounding the statement overheard and its reliance on the juror's own subjective determination of her ability to remain impartial while unaware of the influences she may have been subject to constitutes reversible error. Without knowledge of the statement overheard, there is no way the trial court or the appellate court can determine whether the conversation overheard by the juror was harmless or not.

As we have stated before, unless we, as a reviewing court, can declare our belief that a constitutional error committed by the trial court is harmless beyond a reasonable doubt, the error necessitates reversal. *State v. Jenkins,* 1 Haw. App. 430, 620 P.2d 263 (1980). In this case, given the state of the record before us, we cannot so conclude. Accordingly, the judgment is reversed and the case is remanded for a new trial.

*Thomas Griswold,* Deputy Public Defender *(Kenneth Goya* on the reply brief), for defendant-appellant.

*Ellen B. Politano,* Deputy Prosecuting Attorney, for plaintiff-appellee.