Electronically Filed
Supreme Court
SCWC-13-0002469
25-JUN-2015
07:59 AM

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

STATE OF HAWAI'I, Respondent/Plaintiff-Appellee,

vs.

SUSAN CHIN, Petitioner/Defendant-Appellant.

SCWC-13-0002469

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-13-0002469; CR. NO. 12-1-0331)

June 25, 2015

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON JJ.

OPINION OF THE COURT BY POLLACK, J.

A fair trial by an impartial jury is a basic protection provided by the United States Constitution and the Hawai'i State Constitution to the accused in a criminal case. State v. Keliiholokai, 58 Haw. 356, 357, 569 P.2d 891, 893 (1977). Inherent in this protection is the defendant's right to receive a fair trial by an impartial jury, free from improper prejudice resulting from outside influences or juror misconduct.

Id. Where the existence of an outside influence such as juror misconduct is brought to the attention of the trial court, the court must ascertain the extent of the influence and then, in its sound discretion, take appropriate measures to assure a fair trial. Id. In this case, we are called upon to consider the circumstances in which a court is required to investigate an allegation of inappropriate communication between a juror and a witness during the pendency of a criminal trial.

## I. BACKGROUND

On February 28, 2012, a grand jury indicted Susan Chin with two counts of theft in the first degree, one count of attempted theft in the first degree, and three counts of money laundering.[1] The charges related to conduct allegedly engaged in by Chin when she was acting as a caregiver for the complainant. The alleged conduct involves theft of the proceeds from the sale of the complainant's home, use of the complainant's annuities and money from a joint account held by Chin and the complainant, transfer of money from the complainant's account to Chin's relatives, and change of beneficiaries of the complainant's annuities.

---

[1] Counts I and II charged Theft in the First Degree, Hawaii Revised Statutes (HRS) §§ 708-830.5(1)(a) and 708-830(1); Count III charged Attempted Theft in the First Degree, HRS §§ 705-500(1)(b), 708-830.5(1)(a) and 708-830(1)); and Counts IV–VI charged Money Laundering, HRS § 708A-3 (1)(a)(ii)).

## A.    Trial

Jury trial in the case began on March 15, 2013.[2] Charles Bowen was the neighbor and friend of the complainant in this case.  Bowen introduced the complainant to Chin, who he had been friends with for over twenty years.

After the passing of her husband and as she advanced into her eighties, the complainant had difficulty caring for herself.  There were concerns that the complainant was being taken advantage of financially by a couple, which eventually came to the attention of Adult Protective Services (APS).  The APS caseworker consulted Bowen regarding the complainant and asked whether the complainant had any relatives who could assist her.  The caseworker was not confident that the complainant's niece, who lived in California, would be able to adequately care for the complainant.  Accordingly, the APS caseworker sought out a third-party caregiver, and Chin, who had become close friends with the complainant, was allowed to assist as her caregiver.

The complainant lived with Chin for several months in 2010.  During that time, Bowen saw them on a weekly basis at barbecues and other functions.  When the father of Chin's children died, Chin had to travel to New York, and during this timeframe, the complainant moved back to her home in Aiea.  Bowen

---

[2]    The Honorable Karen S. S. Ahn presided over the trial and post-trial proceedings in this case.

testified that Chin received a check in the amount of $500,000 on a life insurance policy sometime in 2010.

The complainant later moved back in with Chin.  In February 2011, the complainant revoked the power of attorney appointing her niece and executed a new power of attorney appointing Chin as her agent.[3]  Also in February 2011, the complainant closed her bank account that she had shared with her deceased husband, and she opened a new account jointly held by herself and Chin.  Around this time, Chin emailed a realtor regarding potentially selling the complainant's house and finding her a place in an assisted living community.

Chin introduced the complainant to her financial advisor after the complainant complained about her prior financial advisor in front of Bowen, Chin, and others.  The complainant cashed in one of her annuities, receiving about $30,000.  The complainant requested to name Chin as a beneficiary of her remaining two annuities; however, the financial advisor counseled her to instead add Chin as a contingent beneficiary and to designate a family member as the primary beneficiary.  Chin subsequently withdrew approximately $8,000 from the joint account in the complainant and Chin's name to pay off the loan on Chin's car.

---

[3]     The complainant's attorney testified that he did not believe that the complainant was under the undue influence of Chin.

The complainant's home sold for $639,000, and she received $605,114.67 from escrow.[4] The complainant and Chin went to the bank to deposit the proceeds of the sale of the property. They deposited the proceeds into several joint accounts: $200,000 into an account held by Chin and her older son, $200,000 into an account held by Chin and her younger son, $100,000 into an account held by the complainant and Chin, and $100,000 into an account held by Chin and her mother.[5]

On August 9, 2011, Chin was returning from a trip with the complainant at which time the complainant's grandniece was waiting for them at the airport in Honolulu to take the complainant home with her. Six days later, with her grandniece's assistance, the complainant revoked the power of attorney held by Chin and withdrew the remaining money from the bank account which she held with Chin. They also reported to the bank authorities that there was a problem with all of Chin's accounts.

When Chin approached the bank to inquire about the missing funds on August 16, 2011, she was told that the complainant had withdrawn the money from the account held by Chin and the complainant. At that point, Chin attempted to withdraw the bulk of the funds from the two accounts she held with her

---

[4]     The realtor who listed the property testified that the complainant appeared competent during the transaction.

[5]     Individual bank accounts were insured up to $250,000.

sons but was told that she could not do so, as the bank had frozen the accounts. Chin removed her name from her son's joint accounts and added her sister's name instead. Also on August 16, 2011, Chin filed a missing persons report with the Honolulu Police Department (HPD), declaring that the complainant's grandniece had taken the complainant away and that money was stolen money from Chin's personal, preexisting account. On August 30, 2011, HPD officers seized the accounts held by Chin.

At the conclusion of the evidence, the jury found Chin guilty of theft of the proceeds from sale of complainant's home (Count I), changing the name of ownership of two joint accounts (Count IV), and taking $8,000 from the joint account to pay off Chin's car (Count VI); the jury found Chin not guilty of Count III and were unable to reach a unanimous verdicts on Counts II and V.

## B. Chin's Motion for a New Trial

Chin timely filed a Motion for New Trial (motion) based upon an asserted violation of her right to due process, confrontation of witnesses, and a fair trial as guaranteed by the federal and state constitutions. The motion was supported by a declaration of Charles Bowen (Declaration) who explained that he had been called to testify as a witness at Chin's trial because as a person who was previously a neighbor to the

complainant, he had information to share regarding some of the events that took place between the complainant and Chin. His Declaration stated that, during trial, a juror approached him in the men's room and spoke to him about possible employment:

> 3. During the course of my testimony I explained my job status and the fact that I was a civilian employee of the United States government. I also explained that I had a top secret security clearance.
>
> 4. After I testified I was approached in the men's room by a gentleman. He inquired about the possibility of employment and handed me a business card. Attached hereto as Exhibit "A" is a true and correct copy of the business card provided by the man.
>
> 5. I realized later that the individual who handed me his business card was one of the jurors in Susan Chin's case;
>
> 6. Upon this realization I told Susan about the encounter and gave her the card;
>
> 7. I never called or communicated any further with the juror after that encounter in the men's room.
>
> 8. After learning of the verdict in this case I spoke with Susan's attorney by telephone and told him about the encounter . . . .

Attached as Exhibit "A" to the Declaration was a photocopy of a business card with the following information:

> [JUROR'S NAME], USN Ret.
>
> M.A. HSM, B, S. SC&E, A. S. IS
>
> *line entirely blacked out [apparently street address]*
> Suite xxxxx
> Honolulu, HI xxxxx
> Residence: (808)xxxxxxx
> Mobile: xxxxxxx
> Facsimile: (808) xxxxxxx
> xxxxxxxx@hawaiii.rr.com[6]

---

[6]    An "x" has been used here to indicate that the information was blacked out on the exhibit that was filed with the court; presumably the

(continued . . .)

The memorandum in support of the motion for new trial indicated that the juror who had provided the business card was the foreperson of the jury in Chin's case.[7]  The memorandum contended that the juror "sought a favor from Ms. Chin's witness Charles Bowen, which was not forthcoming."  The favor involved "approach[ing] Charles Bowen for a job."  The defense maintained, "The fact that Mr. Bowen did not respond to his advance may have had a significant inappropriate influence on the deliberative process in this case."  Therefore, Chin argued that the actions of the juror "in communicating with Mr. Bowen was highly prejudicial warranting a new trial."

In its response to the motion, the State noted that the granting or denial of a motion for new trial is within the sound discretion of the trial court and would not be disturbed absent a clear abuse of discretion.  The State submitted that the legal framework for determining whether a defendant in a criminal case has been denied a fair trial by an impartial jury is for the trial court initially "to determine whether the nature of the alleged deprivation rises to the level of being

---

(continued . . .)
blacked out information contained the juror's address, phone numbers and email address.

[7]    According to the defense's memorandum supporting the motion, the foreperson "is a retired United States Navy service member," which would appear to coincide with the notation on the business card indicating "USN Ret."

substantially prejudicial." "The defendant bears the burden of making a prima facie showing" of the deprivation. The State maintained that, if the defendant fails to meet her burden, the court is under no duty to investigate the totality of circumstances surrounding the alleged deprivation to determine its impact on jury impartiality.

The State argued it was "pure speculation" that Mr. Bowen "may have had a significant inappropriate influence upon the deliberative process." The State contended that "the defendant must establish that the jury was 'influenced by the alleged misconduct.'" The State also noted that the contact and communication did not involve inadmissible evidence or any aspect of the case itself. "Instead it involved an insignificant 'background witness' who admitted that he had no knowledge of the disposition of the proceeds from the sale of the victim's house-the main disputed issue during the trial." Consequently, the State asserted that the defendant failed to present, specific, substantial evidence of possible juror misconduct," and the court would not abuse its discretion in denying the motion for new trial.

On May 24, 2013, the circuit court held a hearing on the motion.[8] The court issued written findings of fact,

---

[8] The record does not contain a transcript of the hearing.

conclusions of law, and an order on June 5, 2013.  The court found Chin's argument that the improper communication may have had an inappropriate influence on the deliberative process to be "pure speculation."  The court concluded that, based on the record, "the nature of the alleged deprivation did not rise to the level of being 'substantially prejudicial.'"  The court reasoned that the timing and mixed nature of the verdicts undermined Chin's argument that she was deprived of a fair trial by an impartial jury.

The circuit court also noted that defense counsel requested the court to interrogate the jurors or give defense counsel permission to do so.  However, the court concluded that under State v. Furutani, 76 Hawai'i 172, 180, 873 P.2d 51, 59 (1994), the trial court is under no duty to interrogate the jury unless the defendant presents evidence demonstrating a substantially prejudicial deprivation.  Accordingly, the circuit court denied Chin's motion.

The circuit court sentenced Chin to a ten-year term of imprisonment for Counts I and IV and a five-year term of imprisonment for Count VI, all terms to run concurrently, and the court ordered restitution in the amount of $523,762.15 less any amounts recovered from accounts or by law enforcement.  The circuit court entered its Judgment of Conviction and Sentence on July 19, 2013.  Chin filed a timely notice of appeal.

### C.    Appeal to the Intermediate Court of Appeals

On appeal to the Intermediate Court of Appeals (ICA), Chin contended that the trial court abused its discretion in denying her motion for new trial.[9]  Chin argued that she satisfied her initial burden of making a prima facie showing of a deprivation that "could substantially prejudice [her] right to a fair trial" by an impartial jury.  Chin maintained that although the "foreperson of her jury was ordered not to have contact with any witnesses in this case," the juror approached "the main defense witness in the case to seek a job."  Chin argued that because the job did not materialize, it is not "pure speculation," to conclude that the "juror possibly sought a *quid pro quo*, and not receiving any response from Mr. Bowen was upset."

Chin reasoned that once she provided the Declaration and the juror's business card to the court, a rebuttable presumption of prejudice was raised and it was the State's burden to prove harmlessness.  Chin contended that any private communication or contact with a juror during a criminal trial about the matter pending before the jury is presumptively prejudicial and requires a hearing to determine the

---

[9]    Chin also contended that there was insufficient evidence to support the guilty verdicts in Counts I, IV and VI.  Chin has not raised these issues in her Application for Writ of Certiorari.

circumstances of the improper contact and the extent of any prejudice to the defendant. Chin argued that the State failed to meet its burden to overcome the rebuttable presumption because no evidence of harmlessness was proffered. Chin concluded that the inappropriate contact by the foreperson in this case undermined the concept of a fair trial and was highly prejudicial.

In its Answering Brief, the State contended that Chin failed to make a prima facie showing that her right to a fair trial by an impartial jury was substantially prejudiced. The State maintained that Bowen's Declaration did not indicate that the foreperson made any reference to the evidence in this case, that Bowen's conversation with the foreperson was communicated to the other jurors, or that the other jurors were influenced by the alleged misconduct. The State argued that because Chin failed to demonstrate that the juror's actions rose to the "level of being substantially prejudicial," the circuit court was under no duty to recall the jury for questioning, and the court did not abuse its discretion in denying her motion for a new trial.

In her Reply Brief, Chin contends that the State's argument with regard to the sufficiency of the evidence presented by Chin "is fundamentally flawed" because Chin was prohibited from establishing such facts. Chin noted that she requested permission to question the jurors or to have the court

do so, but the request was denied. Chin noted that Rule 3.5(e)(4)(ii) of the Hawai'i Rules of Professional Conduct required her to obtain permission from the court to conduct an inquiry of the jury regarding juror misconduct. Chin argued that once she documented what had occurred to the court, a rebuttable presumption of prejudice arose and it was the burden of the State to prove that the inappropriate contact was harmless.

The ICA issued its Summary Disposition Order (SDO) on October 29, 2014. The ICA found that Chin was required to "make a prima facie showing of a deprivation that could substantially prejudice his or her right to a fair trial by an impartial jury." According to the ICA, "Had the circuit court 'determine[d] that the alleged deprivation [was] substantially prejudicial, the [circuit] court then [would become] duty bound to further investigate the totality of circumstances surrounding the alleged deprivation to determine its impact on jury impartiality.'" (Quoting State v. Yamada, 108 Hawai'i 474, 479, 122 P.3d 254, 259 (2005)). The ICA pointed out that the circuit court found that the nature of the deprivation alleged by Chin did not rise to the level of substantial prejudice, and the ICA further noted that the timing and mixed nature of the verdicts undermined Chin's argument that she was deprived of a fair trial. The ICA concluded that the circuit court did not abuse its discretion in

13

denying the motion for new trial and affirmed the Judgment of
Conviction and Sentence.

## II.  DISCUSSION

In her Application for Writ of Certiorari, Chin
contends that she satisfied her initial burden of making a prima
facie showing of a deprivation that could substantially prejudice
her right to a fair trial by an impartial jury.  Chin maintains
that when evidence is provided to the court that an extrinsic
influence may have tainted the trial, the court should hold a
hearing to determine the extent of the prejudice to the
defendant.  Chin asserts that she is entitled to a new trial
because the trial court refused to conduct an appropriate
inquiry.

The State responds that Chin failed to meet her burden
of showing that her right to an impartial jury was substantially
prejudiced.  Thus, the State argues that the circuit court was
under no duty to recall the foreperson for questioning, and
consequently the court did not abuse its discretion in denying
the motion for new trial.

### A.    The Williamson Test

The Hawai'i Constitution requires, as a fundamental
protection of an individual in a criminal case, trial by an
impartial jury.  State v. Pokini, 55 Haw. 640, 641, 526 P.2d 94,
99 (1974).  The defendant bears the initial burden of making a

prima facie showing of a deprivation that "could substantially prejudice [his or her] right to a fair trial" by an impartial jury.[10]  State v. Williamson, 72 Haw. 97, 102, 807 P.2d 593, 596 (1991) (emphasis added); see also Furutani, 76 Hawai'i at 181, 873 P.2d at 60.  Once the defendant makes a prima facie showing of a deprivation, "a rebuttable presumption of prejudice is raised."  Williamson, 72 Haw. at 102, 807 P.2d at 596. Therefore, the analysis in Williamson initially focuses on the general nature of the outside influence and whether it "could" substantially prejudice a defendant; if the court so finds, then a rebuttable presumption of prejudice is raised that triggers the court's obligation to investigate the totality of the circumstances.  Id.

The circuit court and the ICA applied an incomplete formulation of the Williamson test in examining the juror misconduct in this case.  Instead of applying the Williamson analysis--which requires that the trial court first determine whether the misconduct "could substantially prejudice the defendant's right to a fair trial"--the circuit court and the

---

[10]     That prima facie case includes a presentation by the defendant of "some specific, substantial evidence" showing the occurrence of the outside influence that may have possibly biased the juror.  State v. Yamada, 108 Hawai'i 474, 479, 122 P.3d 254, 259 (2005); State v. Pauline, 100 Hawai'i 356, 381, 60 P.3d 306, 331 (2002); Furutani, 76 Hawai'i at 181, 873 P.2d at 60.

15

ICA considered whether Chin presented evidence demonstrating that she was substantially prejudiced.[11]

Under the circuit court and the ICA's interpretation, the first step considers whether the alleged misconduct substantially prejudiced the defendant's right to a fair trial. In this formulation, the focus of the defendant's initial burden is to demonstrate that the specific misconduct rises to the level of being substantially prejudicial in order to trigger the court's duty to investigate. This interpretation is inconsistent with Williamson.

The origin of the test used by the circuit court and the ICA is the following passage from Keliiholokai: "the initial step for the trial court to take . . . is to determine whether the nature of the [outside influence] rises to the level of being substantially prejudicial." Keliiholokai, 58 Haw. at 359, 569 P.2d at 895. When viewed in isolation, this passage does not reflect the actual holding of the Keliiholokai decision or the law as pronounced in our subsequent cases.

In Keliiholokai, the issue was whether the jury had been improperly influenced by a newspaper article. Id. at 361,

---

[11] The circuit court stated, "Because [Chin] has failed to meet her burden of presenting sufficient evidence of a deprivation that rises to the level of being 'substantially prejudicial[,]' the [ ] motion for new trial is denied." Similarly, the ICA indicated that the trial court would be bound to investigate the circumstances of the misconduct only if the trial court "determined that the alleged deprivation was substantially prejudicial."

569 P.2d at 893. This court explained that the first consideration was whether the contents of the article were of a nature that could be substantially prejudicial.

> Thus, the initial step for the trial court to take, once a claim of prejudicial news accounts is made, is to determine whether the nature of the news accounts rises to the level of being substantially prejudicial.

Id. at 359, 569 P.2d at 894-95 (citation omitted) (quoting United States v. Jones, 542 F.2d 186, 194 (4th Cir. 1976)). Thus, in the context of the question of whether a jury received improper information through a news article, the initial evaluation is to examine the "nature" of the improper influence or alleged misconduct.

The Keliiholokai court ruled that the news account disclosed the defendant's prior convictions. Id. at 360, 569 P.2d at 895. As the defendant in Keliiholokai had not testified in his own behalf and there was "no indication of any relevant and proper purpose for which evidence of [his] prior convictions would have been admissible at trial," the convictions should not have been before the jury. Id.

> [W]e hold that the nature of the article containing appellant's prior convictions was substantially prejudicial and rose to "that degree of prejudice" which "triggered the court's responsibility to investigate further by specifically questioning the jury." All of the factors present in the instant case should have prompted the trial court to conduct "an immediate voir dire inquiry to determine if the jurors had read the offensive articles and, if they had, whether they could nonetheless render a fair and true verdict." This, the trial court failed to do. Accordingly, we conclude that appellant was denied a fair trial.

17

Id. at 360, 569 P.2d at 896 (emphases added) (citations omitted) (quoting Jones, 542 F.2d at 194, and United States v. Thomas, 463 F.2d 1061, 1063 (7th Cir. 1972)) (alteration omitted). The Keliiholokai court first examined the general "nature" of the outside influence, and having determined that it had the potential to substantially prejudice him, applied a presumption of prejudice in favor of the defendant. Id.

Accordingly, although the nature of the news article was "substantially prejudicial," the court in Keliiholokai did not require the defendant to show that he had been prejudiced. Indeed, it was unknown if any of the jurors had read the article. Id. at 361, 569 P.2d at 893. The error by the trial court was in failing to recognize that the article was of a nature that, if read by a juror, could be substantially prejudicial to the defendant, and therefore the trial court was required to investigate whether any of the jurors had been exposed to the contents of the article.

Subsequently, this court's decision in Williamson considered whether a defendant was prejudiced by a dictionary discovered in the jury room following deliberations. Williamson, 72 Haw. at 98, 807 P.2d at 594. Similar to Keliiholokai, the Williamson decision first considered whether the influence was of a nature that could substantially prejudice the defendant's right to a fair trial. Id. at 102-04, 807 P.2d

18

at 596.  The court observed, "During the course of a trial, a juror's obtaining of extraneous definitions or statements of law differing from that intended by the court is misconduct which may result in prejudice to the defendant's constitutional right to a fair trial."  Id. at 102-03, 807 at 596 (emphasis added). Also parallel to Keliiholokai, once the nature of the misconduct was determined to have the potential to substantially prejudice the defendant, this court charged the trial court with a duty to adequately investigate the misconduct.  "[B]y not inquiring into the identity of the juror who brought the dictionary and obtaining a personal explanation from him or her as to its use, the trial court did not have before it the totality of circumstances surrounding the misconduct to decide whether it was harmless."  Id. at 104, 807 P.2d at 597.

Williamson and Keliiholokai require the same procedure of the trial court when an improper influence is raised: (1) an initial determination that the outside influence is of a nature that could substantially prejudice a defendant's right to a fair trial and, once that general nature has been established, (2) an investigation of the totality of the circumstances.  The Williamson and Keliiholokai formulations are equivalent because both refer to "the nature" of the outside influence, indicating that the initial test looks at the general type of improper conduct alleged.  Thus, Keliiholokai instructs a trial court to

19

examine whether the nature of the outside influence "rises to the level of being substantially prejudicial," Id. at 359, 569 P.2d at 895, and Williamson recognizes that this directive requires that the trial court determine whether "such influence is of a nature which could substantially prejudice the defendant's right to a fair trial." 72 Haw. at 102, 807 P.2d at 596.

Since Williamson, this court has most frequently cited the Keliiholokai and Williamson formulations together. For example, State v. Bailey, 126 Hawai'i 383, 271 P.3d 1142 (2012), recently cited the following passage from Furutani:

> [W]hen a defendant in a criminal case claims a deprivation of the right to a fair trial by an impartial jury, the initial step for the trial court to take is to determine whether the nature of the alleged deprivation rises to the level of being substantially prejudicial. If it does not rise to such a level, the trial court is under no duty to interrogate the jury. And whether it does rise to the level of substantial prejudice is ordinarily a question committed to the trial court's discretion.
>
> > Where the trial court does determine that such alleged deprivation is of a nature which could substantially prejudice the defendant's right to a fair trial, a rebuttable presumption of prejudice is raised. The trial judge is then duty bound to further investigate the totality of circumstances surrounding the alleged deprivation to determine its impact on jury impartiality. The standard to be applied in overcoming such a presumption is that the alleged deprivation must be proved harmless beyond a reasonable doubt.
> >
> > The defendant bears the initial burden of making a prima facie showing of a deprivation that could substantially prejudice his or her right to a fair trial by an impartial jury. But once a rebuttable presumption of prejudice is raised, the burden of proving harmlessness falls squarely on the prosecution.

Bailey, 126 Hawai'i at 399-400, 271 P.3d at 1158-59 (emphases added) (quoting Furutani, 76 Hawai'i at 180-81, 873 P.2d at 59-60). Similar passages setting forth both formulations were stated in State v. Keohokapu, 127 Hawai'i 91, 102, 276 P.3d 660, 671 (2012), Yamada, 108 Hawai'i at 478-79, 122 P.3d at 258-59, and State v. Samonte, 83 Hawai'i 507, 523-24, 928 P.2d 1, 17-18 (1996).[12] Thus, the decisions of this court have most frequently cited the Keliiholokai and Williamson formulations together as a single test that first examines whether the general nature of the misconduct could substantially prejudice the right to a fair trial. This test does not require a defendant to prove substantial prejudice before a court has a duty to investigate the circumstances.

For instance, in Bailey, the issue presented was whether a juror's statements to the other members of the jury concerning the defendant's prior convictions warranted a new

---

[12] When only the Keliiholokai formulation has been cited, this court determined that the nature of the misconduct was of a type that could not substantially prejudice a defendant. See State v. Gabalis, 83 Hawai'i 40, 45-46, 924 P.2d 534, 540-41(1996) (citing only the Keliiholokai formulation and affirming denial of new trial based on a general rule that "information regarding the reputation of an establishment or a community location is, in and of itself, insufficiently prejudicial to warrant the grant of a new trial"); see also State v. Kim, 103 Hawai'i 285, 291, 81 P.3d 1200, 1206-07 (2003) (citing only the Keliiholokai formulation and affirming trial court's denial on motion for new trial because allegedly improper juror comments did "not constitute information from outside sources, and, thus, were not improper"); Pauline, 100 Hawai'i at 381-82, 60 P.3d at 331-32 (citing only the Keliiholokai formulation and affirming trial court's denial of motion for new trial based on paucity of evidence demonstrating that the alleged misconduct occurred).

trial.  Bailey, 126 Hawai'i at 385, 271 P.3d at 1144.  This court cited both the Keliiholokai and Williamson formulations and concluded that the defendant "met his burden of 'making a prima facie showing of a deprivation that could substantially prejudice his or her right to a fair trial by an impartial jury.'"  Id. at 399-400, 271 P.3d at 1158-59 (emphasis added) (quoting Furutani, 76 Hawai'i at 180-81, 873 P.2d at 59-60).  We concluded in Bailey that the trial court's "decision to investigate the impact of [the juror's] statements on juror impartiality was proper."[13]  Id. at 400, 271 P.3d at 1159.  Thus, Bailey applied the test, as stated in Williamson, that the court first examines the general nature of the misconduct, and if such misconduct is generally of a nature that could substantially prejudice a defendant, the trial court is required to investigate the totality of the circumstances surrounding the outside influence.

Consequently, the circuit court should not have denied Chin's motion for new trial on the basis that she failed to present sufficient evidence of a deprivation that rose to the level of being substantially prejudicial.  The ICA similarly erred when it indicated that the trial court would be bound to

---

[13]     Following a review of the trial court's investigation, this court reversed the trial court's denial of a new trial because the juror's statements were "insurmountably prejudicial" and thus were not harmless beyond a reasonable doubt.  Bailey, 126 Hawai'i at 403, 271 P.3d at 1162

22

investigate the circumstances of the misconduct only if the trial court "determined that the alleged deprivation was substantially prejudicial."[14]

### B.    The Alleged Misconduct

Turning to the present case, Chin alleged contact occurred between a witness and a juror that may have had a significant, inappropriate influence upon the deliberative process.  Whether contact between a juror and a witness during trial represents an outside influence of a nature that could substantially prejudice a defendant has not been expressly addressed by this court.  The United States Supreme Court has stated, "Private communications, possibly prejudicial, between jurors and . . . witnesses . . . are absolutely forbidden, and invalidate the verdict, at least unless their harmlessness is made to appear."  Mattox v. United States, 146 U.S. 140, 150 (1892) (ordering a new trial based, in part, on improper comments made by the court bailiff in the presence of the jurors).  The Court has also stated,

_____

[14]    If the test applied by the trial court and the ICA were correct, in order for the presumption of prejudice to be invoked, the court would first have to find that substantial prejudice was already present.  It would not be logical to apply a presumption of prejudice when prejudice has already been found.

It is equally incongruous that the nature of the outside influence must be shown to rise to "substantial" prejudice when the rebuttable presumption invokes mere "prejudice."  That is, under the trial court's and ICA's formulation, substantial prejudice, a higher standard, would have to be present in order to create a rebuttable presumption of mere "prejudice," a lower standard.

> In a criminal case, <u>any private communication</u>, contact, or tampering directly or indirectly, <u>with a juror</u> during a trial about the matter pending before the jury is, for obvious reasons, <u>deemed presumptively prejudicial</u>, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties.

<u>Remmer v. United States</u>, 347 U.S. 227, 229 (1954) (emphases added) (remanding to the trial court with directions to hold a hearing to determine whether a communication between an unknown person and a juror was harmful to the defendant).  Contact between witnesses and jurors is "generally improper" because it raises a fundamental concern of whether the jury reached "their verdict based solely on the evidence presented at trial" or was "improperly influenced by inappropriate contacts."  <u>Dillard v. State</u>, 3 A.3d 403, 408-09 (Md. Ct. App. 2010) (quoting <u>Jenkins v. State</u>, 375 Md. 284, 301, 825 A.2d 1008, 1018 (2003)).

This court has made similar pronouncements indicating a strong policy of preventing outside influence on a jury.  "The law . . . zealously protects the efficacy of the right to jury trial by erecting a strong presumption of prejudice when the integrity of jury deliberations has been compromised by unauthorized contact with non-jurors."  <u>Pokini</u>, 55 Haw. at 656, 526 P.2d at 108 (citing to <u>Remmer</u>, 347 U.S. at 229, and <u>Mattox</u>, 146 U.S. at 148-150).  "The outside influence need not touch directly on the guilt or innocence of the defendant to trigger the presumption of prejudice--it is enough that during the

crucial period of jury deliberations there was a private communication bearing even remotely on the trial or the jury's functions in it." Id.

Similarly, in State v. Messamore, the ICA considered a possibly prejudicial conversation overheard in the hallway by one of the jurors during a trial recess. 2 Haw. App. 643, 652, 639 P.2d 413, 420 (1982), abrogated on other grounds by State v. Moore, 82 Hawai'i 202, 921 P.2d 122 (1996). The ICA found it "inherent" in the protection of the right to a fair trial "that a defendant receive a trial by an impartial jury free from outside influences" and ordered a new trial. Id. at 652, 639 P.2d at 419-20.

Thus, in accordance with the decisions of the Supreme Court and of this court, we hold that any contact or private communication, unless trivial,[15] during trial between a juror and a witness represents an outside influence of a nature that could substantially prejudice a defendant's right to a fair trial. See Williamson, 72 Haw. at 102, 807 P.2d at 596.

Chin also alleged that the witness-juror contact was in violation of a specific court instruction to the jury to not

---

[15]   A court may find that brief salutations, such as good morning or good afternoon, are trivial when there are no circumstances present indicating that the communication was anything other than benign. However, if the court is not aware of the substance of the contact, the court has a duty to investigate the nature of the communication, including whether it concerned a matter pending before the jury. See Remmer, 347 U.S. at 229.

talk to witnesses. Conduct of a juror that is contrary to the instructions of the court may constitute grounds for a finding of juror misconduct.[16] In Furutani, the jury's disregard of the court's instruction that they were not to "draw any inference unfavorable to [the defendant] because he did not testify in this case, or give any consideration to this fact in your deliberation" was one factor in this court's determination that the State had not overcome the rebuttable presumption of prejudice. 76 Hawai'i at 177, 186-87, 873 P.2d at 56, 65-66.

While we do not consider whether a violation of any court instruction may warrant investigation, here, the court's instruction to the jury specifically directed "Do not talk to the defendant, lawyers, witnesses or anybody else connected with this case." As the instruction here is consistent with our historical policy of preventing outside influence on a jury, the violation of that instruction provides additional evidence that the influence is of a nature that could substantially prejudice a defendant's right to a fair trial. See Pokini, 55 Haw. at 657, 526 P.2d at 108 (articulating a policy to "zealously protect[] the efficacy of the right to jury trial by erecting a strong presumption of prejudice when the integrity of jury

---

[16] "'Juror misconduct' does not necessarily mean a juror's bad faith or malicious motive but means a violation of or departure from an established rule or procedure for production of a valid verdict." Oahu Publ'ns Inc. v. Ahn, 133 Hawai'i 482, 490 n.8, 331 P.3d 460, 468 n.8 (2014).

deliberations has been compromised by unauthorized contact with non-jurors").

The circuit court was provided substantive evidence that there was contact between Bowen and the jury foreperson that was of a nature that could substantially prejudice Chin's right to a fair trial. Accordingly, Chin made a prima facie showing of juror misconduct that required the court to ascertain the extent and effect of the improper influence.

### C. The Court's Duty to Investigate

When there is juror misconduct that presents a potential for substantial prejudice to a defendant's right to a fair trial, there is a "rebuttable presumption of prejudice," and "[t]he trial judge is then duty bound to further investigate the totality of circumstances surrounding the outside influence to determine its impact on jury impartiality." Williamson, 72 Haw. at 102, 807 P.2d at 596 (emphasis added). An investigation into the totality of circumstances includes an "individual examination of potentially tainted jurors, outside the presence of the other jurors, to determine the influence, if any, of the extraneous matters." Id.

For example, in Williamson, the trial court did "not inquir[e] into the identity of the juror who brought the dictionary and obtain[] a personal explanation from him or her as to its use"; thus, "the trial court did not have before it

the totality of circumstances surrounding the misconduct to decide whether it was harmless." Id. at 104, 807 P.2d at 597. In contrast, in State v. Amorin, 58 Haw. 623, 574 P.2d 895 (1978), the trial court had effectively investigated the totality of the circumstances, including examination of the relevant juror. Id. at 626, 574 P.2d at 898. Accordingly, this court affirmed the finding of the trial court that the misconduct "did not infect the rest of the jury" and was "satisfied beyond a reasonable doubt that the juror misconduct . . . was harmless and a new trial was properly denied." Id. at 631, 574 P.2d at 900.

Thus, where a prima facie case of improper influence has been shown, raising a presumption of prejudice, the totality of the circumstances includes, at a minimum, the court's examination of the juror or jurors involved in the misconduct. In short, there must be sufficient findings such that a reviewing court "can determine whether the [outside influence] was harmless or not." Messamore, 2 Haw. App. at 652, 639 P.2d at 420 (finding reversible error in the trial court's failure to inquire into the totality of the circumstances surrounding statements overheard by a juror).

To overcome the presumption of prejudice, the State must prove that the outside influence on the jury was harmless beyond a reasonable doubt. Williamson, 72 Haw. at 102, 807 P.2d

at 596; see Furutani, 76 Hawai'i at 181, 873 P.2d at 60 ("[T]he burden of proving harmlessness falls squarely on the prosecution."). The trial court's investigation of the totality of the circumstances is a necessary prerequisite to finding that the misconduct was harmless beyond a reasonable doubt. See Amorin, 58 Haw. at 631, 574 P.2d at 900.

Therefore, in this case the circuit court was required to investigate the totality of circumstances surrounding the outside influence to determine its impact on the jury's impartiality. See Williamson, 72 Haw. at 102, 807 P.2d at 596. The court's investigation should have included, at a minimum, an examination of the foreperson. In such an examination, the circuit court might have inquired as to whether the foreperson had heard and understood the court's instruction not to "talk to the . . . witnesses"; whether there was a reason for not complying with this instruction; whether the foreperson gave the witness a business card with personal contact information in expectation of a response; whether the foreperson had approached any other witness; and whether the foreperson told other jurors or talked to other persons about his contact with Bowen. The court might have also considered whether it was advisable to ask other jurors whether the contact between the foreperson and the witness was discussed during deliberations.

Because Chin made a prima facie showing of juror misconduct of a nature that had the potential to substantially prejudice her right to a fair trial, the burden was on the State to rebut the presumption of prejudice by showing that the contact was harmless beyond a reasonable doubt. In light of the absence of an inquiry by the circuit court as to the totality of the circumstances surrounding the potential misconduct, there was no showing by the State that such misconduct was harmless beyond a reasonable doubt. Therefore, it was error for the trial court to deny Chin's motion for new trial without investigation into the totality of the circumstances surrounding the outside influence.

### III. CONCLUSION

We reaffirm the procedure set forth in Williamson that applies when there is an allegation of an improper influence upon a jury. This procedure calls for a court to initially determine whether the improper influence is generally of a nature that could substantially prejudice a defendant's right to a fair trial. Williamson, 72 Haw. at 102, 807 P.2d at 596. If a court finds that the improper influence could be substantially prejudicial, then a rebuttable presumption of prejudice is raised, and the trial court must investigate the totality of the circumstances surrounding the outside influence. Id. When the alleged improper influence involves nontrivial contact between a

juror and a witness during trial, we hold that such contact raises a rebuttable presumption of prejudice, and a court is required to investigate the totality of the surrounding circumstances.

In this case, the circuit court was required to investigate the circumstances surrounding the nontrivial communication between a defense witness and the jury foreperson. Because the circuit court did not conduct such an investigation, we cannot conclude that Chin's fundamental right to a fair trial by an impartial jury was not compromised. Accordingly, the ICA's December 5, 2014 Judgment on Appeal and the circuit court's July 19, 2013 Judgment of Conviction and Sentence are vacated, and the case is remanded to the circuit court for a new trial.

William A. Harrison
for petitioner

Sonja P. McCullen
for respondent

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Michael D. Wilson

