NOT FOR PUBLICATION IN WEST'S HAWAII REPORTS OR THE PACIFIC REPORTER

Electronically Filed
Intermediate Court of Appeals
CAAP-21-0000656
29-AUG-2024
02:53 PM
Dkt. 238 SO

NO. CAAP-21-0000656

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellee/Cross-Appellant, v.
PETER GREWER, Defendant-Appellant/Cross-Appellee

APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CASE NO. 5CPC-18-0000161)

SUMMARY DISPOSITION ORDER
(By: Wadsworth, Presiding Judge, and Guidry, J.,
and McCullen, J., dissenting in part)

Defendant-Appellant/Cross-Appellee Peter Grewer
(**Grewer**) appeals, and Plaintiff-Appellee/Cross-Appellant State of
Hawaiʻi (**State**) cross-appeals, from the Judgment of Conviction
and Sentence (**Judgment**) entered on October 19, 2021, in the
Circuit Court of the Fifth Circuit (**Circuit Court**).[1]  After a
jury trial, Grewer was convicted of Murder in the Second Degree,
in violation of Hawaii Revised Statutes (**HRS**) § 707-701.5,[2] and
sentenced to life imprisonment without the possibility of parole,

---

[1]  The Honorable Randal G.B. Valenciano presided.

[2]  HRS § 707-701.5 (2014 & Supp. 2018) states:

> **Murder in the second degree.**  (1) Except as provided
> in section 707-701, a person commits the offense of murder
> in the second degree if the person intentionally or
> knowingly causes the death of another person; provided that
> this section shall not apply to actions taken under chapter
> 327L.
>
> (2) Murder in the second degree is a felony for which the
> defendant shall be sentenced to imprisonment as provided in
> section 706-656.

pursuant to HRS §§ 706-661(1), 706-662(5), and 706-657.[3/]

On appeal, Grewer contends that: (1) "[a] prospective juror's misconduct violated[] Grewer's constitutional right to a fair and impartial trial"; (2) "[t]here was insufficient evidence presented at trial and in the enhanced sentencing phase to prove the decedent was sixty years of age or older"; (3) [t]he jury instructions given in the enhanced sentencing portion of the trial were prejudicially insufficient, erroneous, inconsistent or misleading"; and (4) "[t]he trial court imposed an illegal sentence."

On cross-appeal, the State contends that "[t]he Circuit Court abused its discretion when it prohibited [a] board-

---

[3/]    HRS § 706-657 (2014) states, in relevant part:

**Enhanced sentence for second degree murder.** The court may sentence a person who was eighteen years of age or over at the time of the offense and who has been convicted of murder in the second degree to life imprisonment without the possibility of parole under section 706-656 if the court finds that the murder was especially heinous, atrocious, or cruel, manifesting exceptional depravity . . . .

HRS § 706-661(1) (2014) states, in relevant part:

**Extended terms of imprisonment.** The court may sentence a person who satisfies the criteria for any of the categories set forth in section 706-662 to an extended term of imprisonment, which shall have a maximum length as follows:

    (1)    For murder in the second degree—life without the possibility of parole[.]

HRS § 706-662(5) (Supp. 2018) states, in relevant part:

**Criteria for extended terms of imprisonment.** A defendant who has been convicted of a felony may be subject to an extended term of imprisonment under section 706-661 if it is proven beyond a reasonable doubt that an extended term of imprisonment is necessary for the protection of the public and that the convicted defendant satisfies one or more of the following criteria:

    . . . .

    (5)    The defendant is an offender against the elderly, handicapped, or a minor eight years of age or younger in that:

        (a)    The defendant attempts or commits any of the following crimes: murder, manslaughter, a sexual offense that constitutes a felony under chapter 707, robbery, felonious assault, burglary, or kidnapping[.]

2

certified forensic pathologist[] from opining as to whether a wound on the decedent's right hand was a defensive wound."

After reviewing the record on appeal and the relevant legal authorities, and giving due consideration to the issues raised and the arguments advanced by the parties, we resolve the parties' contentions as follows, vacate the Judgment, and remand the case for a new trial.

## I.  Grewer's Appeal

## A.  Grewer's Right to a Fair Trial

Grewer's first contention (supra) is dispositive of his appeal.  He argues that the Circuit Court erred in failing to establish that misconduct by **Prospective Juror 20** during jury selection was harmless beyond a reasonable doubt and did not compromise Grewer's right to a fair and impartial trial.

Addressing Grewer's contention requires a brief review of the relevant procedural background.  Jury trial in this case began on April 19, 2021.  On April 21, 2021, during jury selection, the Circuit Court informed the parties that Prospective Juror 20 had made statements to the bailiff "to indicate she doesn't want to be here, period," and "about the guilt or innocence of [Grewer] even before we've started the presentation of evidence . . . ."  The bailiff added:  "She was saying it to myself, Judge, loudly.  There were other jurors that were -- there were no jurors actually directly around us, so it was primarily just to myself.  There were no other jurors that were within earshot at that time."

The Circuit Court then examined Prospective Juror 20, who confirmed that she had spoken loudly about not wanting to be there and that she "already had [an] opinion about it."  She said that two other prospective jurors (later identified as **Prospective Jurors 22** and **48**) had heard her.  When defense counsel asked Prospective Juror 20 whether other jurors were present, she responded in part, "The whole hallway, everybody's inside the hallway, yeah."

The court then separately examined Prospective Jurors 22 and 48.  Prospective Juror 22 told the court that Prospective

Juror 20 had repeatedly said "[she] wanted to be excused" and "d[id]n't want to be here[,]" and that Prospective Juror 48 (whom Prospective Juror 22 initially misidentified as Juror 50) was with Prospective Juror 22 at that time. Prospective Juror 48 told the court that he had heard Prospective Juror 20 say, among other things, "[s]he felt that [Grewer] looked guilty." Prospective Juror 48 also said that another prospective juror (later identified as **Prospective Juror 3**) "came up and said he could hear everything that [Prospective Juror 20] was saying."

The Circuit Court then examined Prospective Juror 3, who told the court that Prospective Juror 20 had said "[s]he didn't want to be here" and that "[i]t was loud and self-serving . . . ." When asked by the deputy prosecuting attorney (**DPA**) whether Prospective Juror 20 had made any statements "regarding how she felt about the person being accused of this crime[,]" Prospective Juror 3 responded, "Yeah. It's like she already made up her mind." Prospective Juror 3 added: "It seemed . . . that she presumed that -- that the fellow was a -- was a murderer." Prospective Juror 3 then had the following exchange with defense counsel:

> [DEFENSE COUNSEL]: So this is when everyone was waiting outside?
>
> PROSPECTIVE JUROR [3]: Yes.
>
> [DEFENSE COUNSEL]: And were there other jurors between you and her or around you or around her?
>
> PROSPECTIVE JUROR [3]: There were -- there were two that came up. I moved away because -- because it was just -- saying it again and again, so I moved away. But I could hear her, and she said something about someone yelling. I went back and I asked her not to talk so loud because I just didn't want to hear this again and again.
>
> [DEFENSE COUNSEL]: But needless to say, there were other jurors in the hallway when she was talking about it?
>
> PROSPECTIVE JUROR [3]: Well, two of them came up and spoke right -- stood in front of her and spoke to her.

Defense counsel then moved for a mistrial, stating: "I think given the fact that there were multiple jurors -- unnamed jurors in the hallway who heard her say things, I think that the jury panel at this point has been tainted and it's a bell that we cannot unr[i]ng." The State opposed the motion, stating:

> According to the jurors that we heard from, this incident was contained mostly between the bailiff and the three jurors that -- four jurors that you have questioned.
>
> The State feels that . . . this incident can be remedied by excusing the three other jurors that were involved in this case and maybe having the Court do a curative instruction or questioning the panel as a whole to see if they heard anything or if this would affect them.

The Circuit Court did not further question the panel or any of the individual prospective jurors. Instead, the court denied the motion for a mistrial, dismissed Potential Juror 20, and instructed all of the prospective jurors as follows:

> Please remember that the verdict must be based only on the evidence received in the courtroom and instructions on the law . . . .
>
> The other thing that I want to tell you is if you heard a juror talking -- a prospective juror talking about this case, I would instruct you to disregard whatever another prospective juror said about this case at this time.
>
> You will -- if you are selected on the jury, you will have an opportunity to discuss the evidence and make a decision during deliberations . . . .
>
> So if you heard any juror make any statements about this case, about the Court, about the attorneys, about any of the parties, including the defendant, please disregard that. Those are not to be taken into consideration because they are not evidence.

The Circuit Court did not dismiss Prospective Jurors 3, 22 and 48 at that time. The State contends, however, that they did not deliberate as to Grewer's guilt.

Based on these events, Grewer argues that the Circuit Court failed to properly investigate whether other potential jurors were exposed to Prospective Juror 20's improper statements and whether such statements compromised their ability to remain fair and impartial.

The Hawaiʻi Supreme Court set out the framework for analyzing improper influences on jurors in State v. Keliiholokai, 58 Haw. 356, 569 P.2d 891 (1977), and, more recently, in State v. Chin, 135 Hawaiʻi 437, 353 P.3d 979 (2015). "Where the existence of an outside influence such as juror misconduct is brought to the attention of the trial court, the court must ascertain the extent of the influence and then, in its sound discretion, take appropriate measures to assure a fair trial." Chin, 135 Hawaiʻi

5

at 439, 353 P.3d at 981 (citing <u>Keliiholokai</u>, 58 Haw. at 358, 569 P.2d at 894). "The defendant bears the initial burden of making a prima facie showing of a deprivation that '<u>could</u> substantially prejudice his or her right to a fair trial' by an impartial jury." <u>Id.</u> at 443, 353 P.3d at 985 (brackets and footnote omitted) (citing <u>State v. Williamson</u>, 72 Haw. 97, 102, 807 P.2d 593, 596 (1991), and <u>State v. Furutani</u>, 76 Hawaiʻi 172, 181, 873 P.2d 51, 60 (1994)). "Once the defendant makes a prima facie showing of a deprivation, 'a rebuttable presumption of prejudice is raised.'" <u>Id.</u> (quoting <u>Williamson</u>, 72 Haw. at 102, 807 P.2d at 596). This analysis "initially focuses on the general nature of the outside influence and whether it 'could' substantially prejudice a defendant; if the court so finds, then a rebuttable presumption of prejudice is raised that triggers the court's obligation to investigate the totality of the circumstances." <u>Id.</u> (citing <u>Williamson</u>, 72 Haw. at 102, 807 P.2d at 596).

In <u>Chin</u>, the supreme court summarized the procedure to be employed in the trial court when an improper influence on a jury has been raised, as follows:

> [W]hen a defendant in a criminal case claims a deprivation of the right to a fair trial by an impartial jury, <u>the initial step for the trial court to take is to determine whether the nature of the alleged deprivation rises to the level of being substantially prejudicial.</u> If it does not rise to such a level, the trial court is under no duty to interrogate the jury. And whether it does rise to the level of substantial prejudice is ordinarily a question committed to the trial court's discretion.
>
> <u>Where the trial court does determine that such alleged deprivation is of a nature which could substantially prejudice the defendant's right to a fair trial, a rebuttable presumption of prejudice is raised.</u> The trial judge is then duty bound to further investigate the totality of circumstances surrounding the alleged deprivation to determine its impact on jury impartiality. The standard to be applied in overcoming such a presumption is that the alleged deprivation must be proved harmless beyond a reasonable doubt.
>
> The defendant bears the initial burden of making a prima facie showing of a deprivation that could substantially prejudice his or her right to a fair trial by an impartial jury. But once a rebuttable presumption of prejudice is raised, the burden of proving harmlessness falls squarely on the prosecution.

Id. at 445, 353 P.3d at 987 (some indentation altered) (quoting State v. Bailey, 126 Hawaiʻi 383, 399-400, 271 P.3d 1142, 1158-59 (2012)); see State v. Lautalo, No. CAAP-18-0000660, 2020 WL 3497666, at *2-3 (Haw. App. June 29, 2020) (mem. op.) (applying Chin's analytical framework where a prospective juror's improper statement could have been overheard by other prospective jurors).

Here, the Circuit Court took the initial step of determining whether the nature of the alleged deprivation, *i.e.*, Prospective Juror 20's statements to other prospective jurors that Grewer "looked guilty," rose to the level of being substantially prejudicial. Indeed, by questioning Prospective Jurors 3, 22, and 48 about the statements, and by then dismissing Prospective Juror 20, the Circuit Court necessarily determined that the statements were of a nature that could substantially prejudice Grewer's right to a fair trial. See Chin, 135 Hawaiʻi at 445, 353 P.3d at 987. Given this record, we also conclude that the statements, which undermined fundamental principles such as the presumption of innocence and the burden of proof, were of a nature that they could substantially prejudice Grewer's right to an impartial jury. See id. at 443, 353 P.3d at 985. Thus, a rebuttable presumption of prejudice was raised, and it was incumbent on the Circuit Court to "further investigate the totality of circumstances surrounding the alleged deprivation to determine its impact on jury impartiality." Id. at 445, 353 P.3d at 987 (quoting Bailey, 126 Hawaiʻi at 400, 271 P.3d at 1159).

We recognize that the Circuit Court was presented with a difficult situation and endeavored to further investigate the surrounding circumstances to the extent it examined Prospective Jurors 3, 22 and 48 about Prospective Juror 20's prejudicial statements. On this record, however, where it appears that Prospective Juror 20 was speaking loudly in the same hallway occupied by other prospective jurors, we cannot say that additional prospective jurors did not also hear the prejudicial statements, and that the Circuit Court adequately investigated the totality of circumstances surrounding the statements to determine their impact on jury impartiality. Moreover, in

addressing whether a jury has been tainted by an outside influence, the supreme court has not indicated that a jury instruction alone — particularly the type of general, hypothetically phrased instruction given here — can remedy the potential for substantial prejudice. See Lautalo, 2020 WL 3497666, at *3 (citing Chin, 135 Hawaiʻi at 443-49, 353 P.3d at 985-91); see also State v. Souza, 142 Hawaiʻi 390, 403, 420 P.3d 321, 334 (2018) ("A jury instruction must be specific to the harm resulting from the error to function as a curative . . . ."). We must therefore conclude that the Circuit Court abused its discretion in failing to adequately investigate the statements made by Prospective Juror 20 and by not determining whether Grewer's right to an impartial jury was impacted by the statements. The State's burden of proving harmlessness was not satisfied in these circumstances.

The dissent concludes that Grewer waived his contention that Prospective Juror 20's misconduct and the Circuit Court's related investigation violated his right to a fair trial, because he "waived a challenge to the empaneled jury." Relatedly, the dissent faults Grewer for not having questioned prospective jurors during voir dire about Prospective Juror 20's comments, so as "to attempt to make a record of bias[.]" We first note that this waiver argument is not one the State raised in its answering brief. We thus deem it waived. See Blaisdell v. Dep't of Public Safety, 119 Hawaiʻi 275, 282, 196 P.3d 277, 284 (2008). In any event, there is good reason why the State did not raise this waiver argument. Grewer moved for a mistrial at the conclusion of the Circuit Court's investigation, after Prospective Juror 3 confirmed there were other jurors in the hallway when Prospective Juror 20 repeatedly made loud prejudicial statements about Grewer. Grewer argued that "the jury panel at this point has been tainted and it's a bell we cannot unr[i]ng." In responding, the State went so far as to suggest that the court "question[] the panel as a whole to see if they heard anything or if this would affect them." But the Circuit Court declined to conduct any further investigation and promptly denied Grewer's motion. Grewer thus preserved his fair-trial claim for appeal. In these

circumstances, where Grewer expressly objected to the presumed prejudicial effect of Prospective Juror 20's statements, there is no basis in Hawaiʻi law for requiring that he also have questioned other potential jurors about Prospective Juror 20's statements, and have exercised his for cause and/or peremptory challenges – all merely to preserve his fair-trial claim.[4/]

Furthermore, the record makes clear (see supra) that the Circuit Court's initial investigation raised a rebuttable presumption of prejudice. That presumption placed a duty on the court to further investigate the totality of circumstances surrounding Prospective Juror 20's statements to determine their impact on jury impartiality. It did not place a duty on the defense to conduct a parallel investigation before the entire jury panel, via voir dire and the exercise of juror challenges, merely to preserve its fair-trial claim. See Chin, 135 Hawaiʻi at 448, 353 P.3d at 990 ("[The court's] investigation into the totality of the circumstances includes an 'individual examination of potentially tainted jurors, outside the presence of the other jurors, to determine the influence, if any, of the extraneous matters'" (quoting Williamson, 72 Haw. 102, 807 P.2d at 596)).

The dissent further concludes that the Circuit Court did not abuse its discretion because it questioned the jurors "directly involved with Prospective Juror 20's comments" and gave a curative instruction to the remaining prospective jurors in the jury pool. The phrase "directly involved with Prospective Juror 20's comments," which is repeated elsewhere in the dissent, carries the weight of the dissent's analysis. (Emphasis added.) The dissent attempts to cabin the prejudicial effect of Juror 20's prejudicial statements as "directly involv[ing]" only three other prospective jurors. But the fact is, because of the limited investigation that the Circuit Court conducted, we do not know based on the record how many other prospective jurors, and how many empaneled jurors, actually heard Prospective Juror 20's

_____

[4/]    There is also no basis in Hawaiʻi law, as the dissent appears to suggest in a footnote, that in order to preserve his argument on appeal, Grewer also had to request that the jury pool be questioned by the court, and/or to inform the court that failing to question the jury pool violated his fair-trial rights.

repeated, loud prejudicial statements in the hallway and simply chose not to engage with her.  This is why the State was careful to argue that the statements were "contained mostly" to the baliff and the four questioned prospective jurors.  Once a rebuttable presumption of prejudice was raised, it was incumbent on the Circuit Court to investigate further to determine the full extent of the effect of Prospective Juror 20's prejudicial statements and their impact on jury impartiality.  The failure to do so in these circumstances was an abuse of discretion.

## B.    Grewer's Additional Contentions

We further conclude that substantial evidence supported the jury's finding in the sentencing phase that the decedent was sixty years of age or older.  Evidence that the decedent was born in 1950 (and was thus at least 67 at the time of her death in 2018) included Exhibit 1, the driver's license record for "Joellen Hartman."  This record specifies the licensee's year of birth as 1950 and includes a photo that the jury could reasonably have concluded depicted the same woman shown in court security video footage, admitted at the guilt phase as Exhibit U, shown entering the courthouse with Rose Doi (**Doi**) on June 18, 2018.  At trial, Doi identified herself in the video and explained that the decedent was the woman she was pushing in the weelchair.  The evidence also included Exhibit 122, a portion of a medical record for "Joellen C. 'Jodi' Hartman," specifying her year of birth as 1950.

Given our conclusions, we do not reach Grewer's remaining contentions on appeal.

## II.  The State's Cross-Appeal

On cross-appeal, the State contends that the Circuit Court abused its discretion by excluding the opinion testimony of Martin Ishikawa, M.D. (**Dr. Ishikawa**) that an injury on the decedent's right hand was a defensive wound.  The State requests that "if this . . . Court orders a new trial in this case, that on retrial, Dr. Ishikawa be permitted to testify as to whether certain wounds suffered by [the decedent] were defensive.

At trial, the Circuit Court qualified Dr. Ishikawa as an expert in anatomic and clinical pathology, with a specialty in forensic pathology. Dr. Ishikawa performed the decedent's autopsy. During his testimony, Dr. Ishikawa described the "wound characteristics" of an injury on the back of the decedent's right hand. The Circuit Court struck part of the testimony, as follows:

> Q. [By DPA] Now, is there anything about the distribution of this injury [on the back of the decedent's right hand] that would tell you how it may have been sustained?
>
> A. [By DR. ISHIKAWA] The injury in this location with this appearance is somewhat classic for what has been termed a defensive wound.
>
> > [DEFENSE COUNSEL]: Objection.
> >
> > THE COURT: Approach.
> >
> > (The following was held at the bench outside the hearing of the jury.)
> >
> > [DEFENSE COUNSEL]: Your Honor, the opinion being rendered at this point is speculation whether or not it's defensive or offensive wound. This is part of the objection that we had raised in the motion in limine regarding going beyond the qualifications of the pathologist in this case. That's speculation whether or not this was defensive or not or even accidental. So, I'll object.
> >
> > THE COURT: [DPA].
> >
> > [DPA]: Your Honor, defensive wound is a term of art. Dr. Ishikawa is qualified as a forensic pathologist. And as a forensic pathologist, he gives opinions as to manner of death.
> >
> > In this case, the manner of death is multiple sharp force injuries. And the State anticipates that he will testify this is a defensive wound and not, I guess, the cause of [the decedent's] death.
> >
> > THE COURT: I'm going to at this time overrule the objection. But I'm going to give him an opportunity to explain what he means by defensive wounds so he can identify that. And then at the point in time he identifies that, then I would be open to taking another objection, [Defense Counsel]. It depends on the definition that he gives from his perspective.
> >
> > Okay. Because he's an expert. So I wanted to clarify what he means that defensive wound.
> >
> > [DPA]: All right.
> >
> > THE COURT: Okay. Thank you.
> >
> > (The following was held in open court.)

11

BY [DPA]:

    Q.    Now, Dr. Ishikawa, what do you mean by defensive wound?

    A.    I mean it has the distribution and appearance from a forensic pathologist standpoint that would be an injury sustained when someone is defending themselves.

    [DEFENSE COUNSEL]:  Objection.

    THE COURT:  Approach.

    (The following was held at the bench outside the hearing of the jury.)

    THE COURT:  I think I'm inclined to agree with [Defense Counsel] that he can testify about the wounds.  But how the wounds happened, I going to let the jury determine that.  And so I'm going to strike that portion of the testimony, [Defense Counsel].

    [DEFENSE COUNSEL]:  Okay.

    THE COURT:  Grant the objection to strike.

    [DEFENSE COUNSEL]:  Thank you.

    (The following was held in open court.)

    THE COURT:  Ladies and gentlemen of the jury, I granted the objection.  I'm going to allow Dr. Ishikawa to testify about the wounds.  How the wounds happened, that's for you to decide.  And so I'm going to strike his testimony regarding defensive wounds.

The State argues that under Hawaiʻi law, particularly State v. Allen, No. 30332, 2013 WL 5926964 (Haw. App. Oct. 31, 2013), "a board certified pathologist may opine as to whether a decedent's injuries were defensive." Id. at *11 ("In knife deaths, one important type of evidence of the death's homicidal character is the presence of defensive wounds, which occur when the decedent is trying to 'ward off the knife.'  Thus, because defensive wounds relate to discovering the cause and manner of death, which is within the realm of forensic pathology, the matter falls within the scope of Dr. Goodhue's expertise.").  The State further argues that, here, Dr. Ishikawa was clearly qualified to opine as to whether the wounds on the decedent's right hand were defensive, and such testimony would "help establish that [the decedent] was conscious when she was stabbed, did not accidentally suffer a fatal stab wound, and did not die by suicide."

12

In response, Grewer argues that Dr. Ishikawa failed to explain why "the distribution and appearance" of the wound on the decedent's right hand made it a defensive wound, and because of this, his opinion was "more akin to 'speculation or possibility.'" Grewer also points out that in Allen, this court ruled that an expert witness was qualified to render an opinion on defensive wounds, and the trial court did not abuse its discretion in allowing such testimony, not that such testimony *must* be accepted in every instance.

Hawaiʻi Rules of Evidence (**HRE**) Rule 702 "does not require a specific degree of certainty for the admission of scientific or other expert testimony." State v. DeLeon, 131 Hawaiʻi 463, 481, 319 P.3d 382, 400 (2014). "[T]he touchstones of admissibility for expert testimony under HRE Rule 702 are relevance and reliability." Id. (quoting State v. Vliet, 95 Hawaiʻi 94, 106, 19 P.3d 42, 54 (2001)). Here, the basis for the Circuit Court's decision to strike the testimony at issue is unclear. After Dr. Ishikawa explained what he meant by "defensive wound," the circuit court stated only, "how the wounds happened, I['m] going to let the jury determine that[,]" and then struck the testimony at issue. To the extent the Circuit Court concluded as a matter of law that a board-certified pathologist such as Dr. Ishikawa could not opine as to whether a decedent's injuries were consistent with defensive wounds, the court erred. See Allen, 2013 WL 5926964, at *11. On retrial, if similar testimony is offered by the State through a qualified witness, and Grewer objects, the Circuit Court should consider the relevance and reliability of the testimony and, as appropriate, whether the probative value of the testimony "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." HRE Rule 403; see Vliet, 95 Hawaiʻi at 108, 111, 19 P.3d at 56, 59.

13

### III.  Conclusion

For the reasons discussed above, we vacate the Judgment of Conviction and Sentence, entered on October 19, 2021, in the Circuit Court of the Fifth Circuit, and remand this case for a new trial.

DATED:  Honolulu, Hawaiʻi, August 29, 2024.


On the briefs:

Melinda K. Mendes                    /s/ Clyde J. Wadsworth
for Defendant-Appellant on the       Presiding Judge
opening and reply briefs.

Henry P. Ting,                       /s/ Kimberly T. Guidry
Deputy Public Defender,              Associate Judge
for Cross-Appellee on the
answering brief.

Tracy Murakami,
Deputy Prosecuting Attorney,
County of Kauaʻi,
for Plaintiff-Appellee/
Cross-Appellant.

DISSENTING OPINION BY MCCULLEN, J.

Here, the circuit court did what it was supposed to do by questioning the prospective jurors directly involved with Prospective Juror 20's comments. Based on this questioning, the circuit court apparently determined the nature of the alleged deprivation did not rise to the level of being substantially prejudicial and could be addressed by a curative instruction. In my view, this was not an abuse of discretion.

And even if the circuit court abused its discretion, Defendant-Appellant Peter **Grewer** did not preserve for appeal his challenge to the *empaneled* jury.

Thus, I respectfully dissent.

## I. DISCUSSION

Following a month-long trial, a jury convicted Grewer of murdering his landlord, a 67-year-old woman confined to a wheelchair. Grewer timely appealed.

## A. The Circuit Court Did Not Abuse Its Discretion

On appeal, Grewer contends he "was deprived of his constitutional right to a fair trial by an impartial jury." In particular, Grewer argues that "it is incomprehensible why the trial court choose [sic] not to question the other jurors to determine whether they had been exposed to similar comments by

prospective Juror No. 20, and whether the comments had compromised their abilities to remain fair and impartial."[1]

"[W]hen a defendant in a criminal case claims a deprivation of the right to a fair trial by an impartial jury," the circuit court must first "determine whether the nature of the [alleged deprivation] rises to the level of being substantially prejudicial." State v. Furutani, 76 Hawaiʻi 172, 180, 873 P.2d 51, 59 (1994) (quoting State v. Keliiholokai, 58 Haw. 356, 359, 569 P.2d 891, 895 (1977)). "And whether it does rise to the level of substantial prejudice is ordinarily a question committed to the trial court's discretion." State v. Chin, 135 Hawaiʻi 437, 445, 353 P.3d 979, 987 (2015) (quoting Furutani, 76 Hawaiʻi at 180, 873 P.2d at 59).

Following an 18-minute recess, the circuit court informed the parties that Prospective Juror 20 made comments to the bailiff. The circuit court then examined the bailiff,

---

[1] In his points of error, Grewer does not cite where in the record he requested the jury pool be questioned or where he informed the circuit court he believed failing to question the jury pool violated his right to a fair trial by an impartial jury. Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 28(b)(4) (placing the burden on the appellant to state where in the record the alleged error was brought to the court's attention).

Notably, Grewer also does not cite to the denial of his motion for mistrial as preserving his challenge to the empaneled jury's impartiality. HRAP Rule 28(b)(4). This makes sense as no jury was yet empaneled and Grewer's motion was not based on the circuit court's failure to question the jury pool.

And Grewer does not request plain error review in his points of error. This is further evident as his standards of review and argument also make no mention of plain error. This point should be deemed waived.

2

Prospective Juror 20, and the other three prospective jurors directly involved with Prospective Juror 20's comments.

Crucially, this means unlike State v. Lautalo the circuit court here made inquiries to determine if Prospective Juror 20's comments rose to the level of being substantially prejudicial.  147 Hawaiʻi 627, 465 P.3d 1074, No. CAAP-18-0000660, 2020 WL 3497666 at *3 (App. June 29, 2020) (mem. op.).

The court's inquiry was targeted and tailored to immediately determine the scope of any potential prejudice.  The potential prejudice was that unidentified prospective jurors in the hallway may have overheard Prospective Juror 20 say she felt the defendant "looked guilty" and she "presumed" he was a murderer.

Based on its inquiry, the circuit court concluded that Prospective Juror 20's comments were self-serving because she did not want to be there.  With no other identified jurors directly involved with Prospective Juror 20's comments for the circuit court to individually question, it removed Prospective Juror 20.  And by not immediately removing the other three prospective jurors involved, it may be reasonably inferred that the circuit court determined they were not tainted.[2]

---

[2]  For example, when one of the prospective jurors involved with Prospective Juror 20's comment was asked, "Would that affect your perception," the prospective juror replied "Oh, god, no."

But recognizing that the substance of Prospective Juror 20's comments were unclear, the circuit court took further steps to ensure a fair trial by giving a curative instruction addressing the possibility unidentified prospective jurors may have overheard her comments in the hallway.[3] See State v. Webster, 94 Hawai'i 241, 248, 11 P.3d 466, 473 (2000) (it is well established a "jury is presumed to follow the court's instructions").

This instruction occurred less than an hour after the circuit court learned of the comments, eschewed accentuation of Prospective Juror 20's remarks, and emphasized "the verdict must be based only on the evidence received in the courtroom and instructions on the law." See People v. Mersman, 148 P.3d 199, 203-04 (Colo. App. 2006) (determining an instruction to reject a prospective juror's comment that he knew the defendant's only witness "through the drug scene" and render a verdict based on the evidence presented in the courtroom sufficiently cured any harm).

---

[3] Grewer did not object to the curative instruction given. Hawai'i Revised Statutes § 641-16(c) (2016) (prohibiting reversal based on an instruction to the jury where the alleged error in giving the instruction was not brought to the court's attention).

Grewer also does not rebut the presumption that the curative instruction was followed. State v. Webster, 94 Hawai'i 241, 248, 11 P.3d 466, 473 (2000).

I pause to emphasize two factors that are critical in reviewing the circuit court's course of action in this case.

First, and to reiterate, the inquiry into whether Prospective Juror 20's comments "rise to the level of substantial prejudice is ordinarily a question committed to the trial court's discretion."  Chin, 135 Hawai'i at 445, 353 P.3d at 987 (citation omitted).

Second, the Keliiholokai line of supreme court cases discussing inquiry into juror misconduct had already empaneled juries when the misconduct came to light.  Keliiholokai, 58 Haw. at 357, 569 P.2d at 893; see Chin, 135 Hawai'i at 441, 353 P.3d at 983 ("His [d]eclaration stated that, during trial" misconduct occurred); Furutani, 76 Hawai'i at 177, 873 P.2d at 56 (where during deliberations it became apparent jurors had concealed their bias during voir dire); State v. Williamson, 72 Haw. 97, 99, 807 P.2d 593, 595 (1991) ("After the jury ended deliberations . . . but before the verdict was returned, the bailiff" discovered the misconduct).

These factors should be kept in mind as this court makes "an independent examination of the totality of the circumstances[.]"  Keliiholokai, 58 Haw. at 360, 569 P.2d at 895.

In reviewing the totality of the circumstances here, the circuit court apparently determined that the nature of the

5

alleged deprivation (unidentified prospective jurors possibly overhearing Prospective Juror 20's comments) did not rise to the level of being substantially prejudicial, which was within the scope of its discretion to determine. <u>Chin</u>, 135 Hawaiʻi at 445, 353 P.3d at 987.

And this determination was sound because, unlike exposure to prior bad acts or newspaper articles, Prospective Juror 20's comments were her personal opinions based on her feelings and her perception of Grewer's appearance, something other jurors could easily reject. <u>Skilling v. United States</u>, 561 U.S. 358, 383 (2010) ("A jury may have difficulty in disbelieving or forgetting a defendant's opinion of his own guilt but have no difficulty in rejecting the opinions of others because they may not be well-founded.") (citation omitted).

Simply put, the circuit court did not abuse its discretion when it (1) conducted an inquiry by questioning the bailiff, Prospective Juror 20, and the other three prospective jurors directly involved, and (2) instructed the jury pool to reject comments about the case or defendant if overheard and that "the verdict must be based only on the evidence received in the courtroom and the instructions on the law."

The circuit court, here, acted well within its discretion.

**B.      Grewer Waived A Challenge To The Empaneled Jury**

The totality of circumstances also shows Grewer abandoned challenging the empaneled jurors for bias or prejudice based on unidentified prospective jurors possibly overhearing Prospective Juror 20's comments when he passed for cause.  Thus, he waived this issue for appeal.

"A defendant in a criminal case cannot sit in silence and accept a juror as unprejudiced and fair and then subsequently allege error in the retention of the same juror."  State v. Graham, 70 Haw. 627, 634, 780 P.2d 1103, 1107-08 (1989) (citation omitted).  A challenge for cause is defined as "[a] party's challenge supported by a specified reason, such as bias or prejudice, that would disqualify that potential juror."  Challenge, Black's Law Dictionary 287 (12th ed. 2024).

As to the first five jurors seated before Prospective Juror 20's comments, Grewer conducted a 30-minute voir dire after the court excused Prospective Juror 20 and gave a curative instruction.  Grewer could have asked questions about Prospective Juror 20's comments to attempt to make a record of bias, but did not.  See Sayedzada v. State, 419 P.3d 184, 194 (Nev. 2018) (explaining that "a party waives the right to challenge a juror's presence on the jury on appeal where the party's appellate argument is based on facts known to the party during voir dire; the party consciously elected not to pursue,

7

or abandoned, a challenge for cause on that basis; and the party accepted the juror's presence on the jury").  At the end of voir dire, Grewer passed for cause, meaning he had no good cause to request any of those five jurors be excused.

Each of the remaining seven jurors seated after Prospective Juror 20's comments and the circuit court's curative instruction expressly stated they could be fair and impartial. Grewer questioned these jurors, and passed for cause.  See State v. Johnson, 188 P.3d 912, 921 (Idaho 2008) (explaining that "the failure to challenge a juror for cause 'indicates a satisfaction with the jury as finally constituted'") (citation omitted).

Grewer also waived two of his twelve peremptory challenges, either of which could have been used to remove any of these jurors.  See State v. Iuli, 101 Hawaiʻi 196, 205-06, 65 P.3d 143, 152-53 (2003) (holding a defendant failed to demonstrate their rights were affected because they did not request additional peremptory challenges or identify a specific juror they would have dismissed).  This strongly suggests Grewer believed the empaneled jurors were fair and impartial.

Grewer examined all jurors on the empaneled jury – which did not include anyone directly involved with Prospective Juror 20's comments – and raised no challenges to their impartiality.  Thus, Grewer waived any challenge to the

*empaneled* jury's impartiality based on unidentified prospective jurors possibly overhearing Prospective Juror 20's comments.

## II. CONCLUSION

In conclusion, I would not vacate Grewer's murder conviction and remand for a new trial based on Grewer's contention that the circuit court should have questioned all prospective jurors in the jury pool.

The circuit court did not abuse its discretion by questioning the prospective jurors directly involved and giving a curative instruction to the jury pool. And even if it abused its discretion, Grewer passed for cause the empaneled jurors and, thus, waived this issue.

In my view, today's decision erodes the discretion of our trial courts and ignores the totality of the circumstances. Thus, I respectfully dissent.

/s/ Sonja M.P. McCullen
Associate Judge