136 Ariz. 604 (1983)
667 P.2d 1320
STATE of Arizona, Appellee,
v.
James Garcia MONTANO, aka James Eng, Appellant.
No. 5484.
Supreme Court of Arizona, In Banc.
July 28, 1983.
*605 Robert K. Corbin, Atty. Gen., William J. Schafer III, Chief Counsel, Crim. Div., Linda A. Akers, Asst. Attys. Gen., Phoenix, for appellee.
Christopher C. Kempley, Pinetop, for appellant.
GORDON, Vice Chief Justice:
Defendant was found guilty of first degree murder and armed robbery. He was sentenced to life without possibility of parole for twenty-five years for the murder, and a term of fourteen years for the armed robbery. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), and A.R.S. §§ 13-4031 and 13-4033. We affirm.
On June 12, 1980 an Arizona Department of Transportation crew reported finding a body along Interstate 40 a few miles west of Winslow. The body was later identified as that of Willie J. Glover. Glover had been shot in the head, face and back. Testimony was introduced at trial indicating that Glover had been dead from three to five days.
Glover was last seen alive on June 9, 1980 when he was getting off work at approximately 4:00 p.m. at the Duke City sawmill in Winslow. Glover was seen by his fellow employees walking out the sawmill gate towards his two-tone green pickup truck. Appellant's cousin testified that at approximately the same time that day he drove Montano to the sawmill. After dropping Montano off at the same parking lot where the victim's truck was parked, he saw the appellant walk towards a green pickup truck and get in. Individuals who were close to the sawmill at around 4:00 p.m. that day testified that they heard three or four sounds that sounded like gun shots. One of Glover's co-workers testified that he saw the victim's truck later the same day being driven by someone other than Glover.
On June 10, 1980 Montano drove the victim's truck into a gas station in Valle, Arizona. After trading a box of tools in the back of the truck for gasoline, the appellant sold the truck to the owner of the station for $700 and a used car. The defendant then signed the victim's name on the truck title and left in the used car. Montano was subsequently arrested in Phoenix on June 16, 1980.
On appeal appellant argues: (1) the trial court should have dismissed the entire jury panel due to prejudicial statements made during voir dire; (2) the trial court improperly refused to admit into evidence the substance of a phone call made to the Winslow Police Department; and (3) the trial court did not apply the correct standard when determining if the defendant was competent to be sentenced.
Prejudice During Jury Voir Dire
During the voir dire of the jury the trial judge asked the jury panel the following question:
"THE COURT: As I indicated to you the defendant in this case is Mr. James Montano. Mr. Montano is accused by the State of Arizona of having committed the crime of first degree murder on or about the 9th day of June, 1980, and also of committing the crime of armed robbery at the same time.
"Have any of you heard of this case or read of any of it?"
One of the jurors responded:
"A JUROR: Teri High. I know the situation. I am from Winslow. I know the man he murdered real well. He was a good friend and came from a good family."
Although Mrs. High was excused from being a juror in this case, defense counsel moved to have the entire jury panel dismissed claiming that the statement was highly prejudicial since it affirmatively stated that the defendant had murdered the victim. The trial judge denied this motion. The defendant now claims that the trial court erred in refusing to dismiss the jury panel.
*606 In State v. Duke, 110 Ariz. 320, 518 P.2d 570 (1974) this Court quoted with approval the following language:
"`[B]oth the State and the defendant are entitled to a fair and impartial jury. When events occur that cause an irrevocable cloud over the jury's fairness and impartiality, it is far better to grant the motion for mistrial and start over again. This action should not be taken lightly, but when the interest of justice so demands, it should nevertheless be done.' State v. Reynolds, 11 Ariz. App. 532, 535, 466 P.2d 405, 408 (1970)."
110 Ariz. at 323, 518 P.2d at 570. Absent a clear showing that the trial court abused its discretion in the selection of the jury, we will not set aside a ruling upon a challenge to the jury. State v. Rose, 121 Ariz. 131, 589 P.2d 5 (1978); State v. Duke, supra. In the instant case we find that the interests of justice did not dictate that the jury panel be excused.
After breaking the jury panel into smaller groups to facilitate questioning, the judge asked each group whether they would be able to completely forget the statement made by juror High and "not let it influence them in any way, shape, manner and form," instead considering the case and deciding it solely on the evidence heard in court. Thereafter, each prospective juror was questioned individually. Any juror indicating that they could not sit fairly and impartially was excused. Finally, the jury was instructed that their factual determinations were to be based only upon evidence produced in court. These precautions minimized any effect that the juror's statement could have had on the remainder of the panel. We conclude, therefore, that the trial judge did not abuse his discretion in refusing to dismiss the jury panel.
Crime Stop Call
The defendant next claims that the trial judge improperly granted the state's motion in limine prohibiting a Crime Stop call received by the Winslow Police Department from being introduced at trial. Defense counsel's offer of proof summarized the substance of the caller's statement as follows:
"[T]here was a 5 foot 8 Mexican over in the Arrow Head Bar that was saying that he had killed a black man and had put his body out on Highway 87."
The defense argued that this evidence, along with testimony that was given at trial, established that another individual was involved in the homicide and thus tended to negate the guilt of Montano.
In examining the Crime Stop call we note that the statement involves three levels of hearsay  the statement made at the Arrow Head Bar, the statement made over the phone to the Winslow Police Department, and the Crime Stop report kept by the Winslow Police Department. Ariz.R. Evid. 805 requires that in order for such a statement to be admissible, a hearsay exception must apply to each part of the combined statement. Defense counsel asserts several hearsay exceptions, all of which are claimed to allow admission of the substance of the Crime Stop call.[1] We note, however, that none of these exceptions are applicable to the declarant's statement at the Arrow Head Bar or to the caller's statement; rather, the exceptions are directed towards the Crime Stop report kept by the Winslow Police Department. Furthermore, we do not believe that there is any exception to the hearsay rule which is applicable to the Arrow Head statement. We conclude, therefore, that since this part of the statement fails to conform to an exception to the hearsay rule, the trial court properly ruled that the combined statement was inadmissible. *607 State v. McGann, 132 Ariz. 296, 645 P.2d 811 (1982).
Sentencing
Defendant next claims that the trial judge applied an incorrect standard when determining if the defendant was competent for sentencing. Prior to trial defense counsel claimed that Montano was unable to help in preparing for trial and therefore moved to have the defendant examined pursuant to Ariz.R.Crim.P. 11. After reviewing medical reports of three physicians who examined the defendant, the trial judge ruled that Montano was competent to stand trial. Shortly after the trial was completed and before sentencing the defendant suffered a seizure and became comatose or semi-comatose and remained in that condition for two months. Although the defendant's condition steadily improved in the following months, defense counsel again requested that Montano be examined in order to determine if the defendant was competent to be sentenced. After a hearing during which two physicians testified and submitted medical reports concerning the defendant's mental and physical status, the court ruled that Montano was competent to be sentenced.
Ariz.R.Crim.P. 11.1 reads as follows:
"Definition and effect of incompetency
"A person shall not be tried, convicted, sentenced or punished for a public offense while, as a result of a mental illness or defect, he is unable to understand the proceedings against him or to assist in his own defense." (emphasis added)
The Defendant has failed to direct this Court's attention to, and we have been unable to find, any part of the record which would indicate that the trial judge applied a competency standard different from that enumerated in Ariz.R.Crim.P. 11.1. In fact, when framing the issue being decided during the pre-sentencing competency hearing the trial judge stated:
"THE COURT: It's my position that having ruled on the rule 11 that he was competent to stand trial and understand the proceedings and based upon the medical advice and testimony that I had, that the matter before me now, as to only whether or not he understands the nature of the proceedings with respect to sentencing." (emphasis added)
We must therefore conclude that the trial court applied the proper standard when it determined that the defendant was competent to be sentenced.
We have examined the record for fundamental error as required by A.R.S. § 13-4035 and find none. The judgments of conviction and sentences for first degree murder and armed robbery are affirmed.
HOLOHAN, C.J., and HAYS, CAMERON and FELDMAN, JJ., concur.
NOTES
[1] Defense counsel claims that the Crime Stop call is admissible under either Ariz.R.Evid. 803(6) (as a business record of the police department), 803(8) (as a public record or report), or 804(b)(5) (the general catch-all exception applicable when a statement has "circumstantial guarantees of trustworthiness" and "is offered as evidence of a material fact," "is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts," and "the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.").