Electronically Filed
Supreme Court
SCWC-21-0000656
17-SEP-2025
07:58 AM
Dkt. 11 OP

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

STATE OF HAWAIʻI,
Petitioner/Plaintiff-Appellee/Cross-Appellant,

vs.

PETER GREWER,
Respondent/Defendant-Appellant/Cross-Appellee.

SCWC-21-0000656

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-21-0000656; CASE NO. 5CPC-18-0000161)

SEPTEMBER 17, 2025

RECKTENWALD, C.J., McKENNA, EDDINS, GINOZA, AND DEVENS, JJ.,

OPINION OF THE COURT BY RECKTENWALD, C.J.

## I.   INTRODUCTION

This case concerns a prospective juror's comments in the courthouse hallway during a recess from jury selection, and the court's discretion to determine its prejudicial impact.

During a recess from jury selection in Respondent Peter Grewer's murder trial in the Circuit Court of the Fifth

1

Circuit (circuit court), a prospective juror made certain comments to the bailiff and three other prospective jurors concerning her desire to be excused from service. The circuit court subsequently questioned the prospective juror and three other prospective jurors who overheard her comments, after which the court dismissed the prospective juror and gave curative instructions to the remaining jurors. Although the three other prospective jurors were not immediately excused, they were not empaneled or selected as alternate jurors.

At trial, the State introduced substantial physical and circumstantial evidence establishing Grewer stabbed Joellen Hartman, his 67-year-old wheelchair-bound landlord, on or about June 19, 2018. The jury found Grewer guilty of murder in the second degree and the circuit court sentenced him to life in prison without the possibility of parole. Grewer appealed, arguing in relevant part that the prospective juror's comments violated his right to a fair trial by an impartial jury.

As set forth below, we hold that: (1) the circuit court's investigation was adequate; (2) its curative instructions to the jury were sufficient to cure any prejudice that may have resulted from the comments; and (3) any prejudice caused by the comments was harmless beyond a reasonable doubt in light of the overwhelming, uncontradicted physical evidence of Grewer's guilt. As such, we hold the circuit court did not

abuse its discretion in denying Grewer's oral motion for a mistrial.

Accordingly, we reverse the Intermediate Court of Appeal's (ICA) October 8, 2024 Judgment on Appeal and affirm the circuit court's October 19, 2021 Judgment of Conviction and Sentence.

## II.   BACKGROUND

### A.   Circuit Court Proceedings[1]

On June 25, 2018, Grewer was charged via complaint with a single count of murder in the second degree in violation of Hawaiʻi Revised Statutes (HRS) § 707-701.5[2] (2014) for the killing of his 67-year-old, wheelchair-bound landlord, Joellen Hartman (victim), who was found dead in her home, having suffered 17 stab wounds.  The State sought extended and enhanced sentencing due to the heinous and cruel nature of the crime and the victim's elderly age, pursuant to HRS §§ 706-662(5) (2014) and -657 (2014).[3]  Grewer pleaded not guilty.  After a lengthy

---

[1]     The Honorable Randal G.B. Valenciano presided.

[2]     "[A] person commits the offense of murder in the second degree if the person intentionally or knowingly causes the death of another person." HRS § 707-701.5.

[3]     Under HRS § 706-662(5), convicted felons who commit murder "may be subject to an extended term of imprisonment . . . if it is proven beyond a reasonable doubt that an extended term of imprisonment is necessary for the protection of the public" when the defendant "inflicts serious or substantial bodily injury upon a person . . . [s]ixty years of age or older[.]"
       Defendants convicted of murder in the second degree may be sentenced "to life imprisonment without the possibility of parole . . . if the court finds that the murder was especially heinous, atrocious, or cruel, manifesting exceptional depravity."  HRS § 706-657.

pre-trial period due to discovery, multiple motions to suppress, and COVID-19 pandemic delays, Grewer's jury trial commenced on April 19, 2021.

## 1. Jury Selection

Jury selection was conducted over four days, between April 19 and April 22, 2021. On the morning of April 21, the third day of jury selection, during a recess from 11:31am until 11:47am, in the hallway outside the courtroom, Prospective Juror 20 expressed to the courtroom bailiff a desire to be excused from service, stating that she "already had [her] opinion."

The circuit court immediately initiated an inquiry into Prospective Juror 20's comments. Before questioning Prospective Juror 20, the court conferred with the bailiff, who informed the court, "[Prospective Juror 20] was saying it to myself, Judge, loudly. There were other jurors that were – there were no jurors actually directly around us, so it was primarily just to myself. There were no other jurors that were within earshot at that time."

Out of an "abundance of caution," the circuit court immediately questioned Prospective Juror 20 outside the presence of other jurors. Prospective Juror 20 confirmed that she loudly told the bailiff, "I wish I didn't have to be here" because she "already had [her] opinion about [the case.]" The circuit court also learned that in addition to the bailiff, Projective Juror

20 spoke to three other individuals during the recess: Prospective Juror 22, Prospective Juror 48, and Prospective Juror 3. Prospective Juror 20 stated that she told Prospective Juror 22, who was standing next to Prospective Juror 48, "I wish I didn't have to be here. I - literally I caretake for my uncle. I have – he just got out of the hospital." Prospective Juror 3 was also identified as someone who overheard Prospective Juror 20's conversation with Prospective Juror 22.

The circuit court individually examined Prospective Jurors 22, 48, and 3, with counsel for both parties present and participating in the inquiry. Prospective Juror 20 was also present for the examination. Otherwise, the circuit court conducted the individual examinations outside the presence of all other prospective jurors.

All three prospective jurors characterized Prospective Juror 20's comments as voicing her desire to be excused from jury duty. Prospective Juror 22 told the court that they heard "[Prospective Juror 20] just [keep] saying, I don't want to be here, I don't want to be here," but Prospective Juror 22 did not hear any comments about Grewer's innocence or guilt.

Prospective Juror 48 added that Prospective Juror 20 made comments about Grewer's appearance, stating that he "looked guilty" and that she "didn't want to be near someone like that." Prospective Juror 3 similarly recalled that Prospective Juror 20

remarked that it felt "weird being in this room with [Grewer]" and it was "uncomfortable for her being in this room because it was a murder [case]." Following this inquiry, and without objection from counsel, the circuit court excused Prospective Juror 20.

Once Prospective Juror 20 was excused and only counsel remained in the courtroom, defense counsel orally moved for a mistrial, which the circuit court denied. Defense counsel argued that Prospective Juror 20's comments "tainted the jury," given that there were multiple jurors in the hallway who heard Prospective Juror 20's comments. Yet, defense counsel did not request further inquiry into any other prospective jurors outside of the four initially identified.

The State opposed the motion for mistrial, contending that the "incident was contained mostly between the bailiff and the . . . four jurors that you have questioned." The State further proposed alternative remedies, including excusing Prospective Jurors 22, Prospective Juror 48, and Prospective Juror 3, questioning the panel as a whole, or issuing a curative instruction.

The circuit court denied the defense's motion for mistrial. It reasoned:

> Yeah. So I understand the statement made by [Prospective Juror 20] was unfortunate. It's unclear the substance of the statement she made. One – she had two motives. Well, she had one motive basically. She didn't

> want to be here, and so she made statements to gain that –
> try and leverage that situation.
>
> One of the things the Court will do is the Court will
> – first of all, I'll deny the motion for mistrial. The
> Court will give a curative instruction. The expectation is
> that the jurors will follow the Court's instructions.

(Emphasis added.)

The circuit court did not excuse Prospective Jurors 22, 48, or 3, or conduct further voir dire. Instead, it provided the following curative instruction to the remaining prospective jurors once they re-entered the courtroom:

> We are going to proceed with the jury selection, but
> before I proceed, I want to give you some instructions.
> And basically I already gave you the instructions, so this
> is a reminder.
>
> Please remember that the verdict must be based only
> on the evidence received in the courtroom and instructions
> on the law. The other thing is that I want to tell you
> please do not talk to anyone, including your fellow jurors,
> about this case. You can talk to other people about other
> things, but do not talk about this case.
>
> The other thing that I want to tell you is if you
> heard a juror talking – a prospective juror talking about
> this case, I would instruct you to disregard whatever
> another prospective juror said about this case at this
> time.
>
> You will – if you are selected on the jury, you will
> have an opportunity to discuss the evidence and make a
> decision during deliberation. I told you earlier keep an
> open mind, do not make decisions, and that the evidence you
> receive will be received in this courtroom.
>
> So if you heard any juror make any statements about
> this case, about the Court, about the attorneys, about any
> of the parties, including the defendant, please disregard
> that. Those are not to be taken into consideration because
> they are not evidence.

(Emphases added.)

Later that same day, the court again instructed the remaining prospective jurors[4]:

> I want to remind you that your verdict or decision must be based only on the evidence received in the courtroom. <u>Anything you receive outside of the courtroom, whether you hear it or whether somebody tells you, you hear it through a conversation between other people, including statements from other prospective jurors, you must disregard that.</u> Your decision must be based only on the evidence presented in the courtroom.
>
> <u>If you hear anyone talking about this case to you or if you hear anyone talking about this case around you, please alert the court staff</u>.

(Emphases added.)

The next day, April 22, 2021, the empaneled jury was sworn in. Although Prospective Juror 3, Prospective Juror 22, and Prospective Juror 48 were not immediately excused, none of them served on the empaneled jury, nor as alternate jurors. The State exercised two of its twelve peremptory challenges to excuse Prospective Juror 22 and Prospective Juror 3. Prospective Juror 48 was never selected for individual voir dire from the jury pool. Defense counsel did not excuse for cause or use a peremptory challenge to excuse any of the three prospective jurors.

---

[4] The State received an email containing a video by a prospective juror that was posted to Facebook the day prior. Although the prospective juror in the video did not "say anything in particular about the case, . . . she mention[ed] how to get out of jury service." Upon learning about the social media post, the circuit court declined to question her, noting "she's not the first one" to post on social media. Grewer does not raise the prejudicial impact of a prospective juror posting about jury selection in his trial on social media, and we do not further address it here.

## 2. Evidence presented at trial

Throughout the month-long trial, the State presented extensive evidence to demonstrate Grewer knowingly and intentionally killed the victim in an "especially heinous, atrocious, or cruel" manner. See HRS § 706-657. The State introduced testimony from 23 witnesses, including law enforcement officers and detectives, the medical examiner who conducted the victim's autopsy, DNA analysts and crime lab technicians, the victim's friends and caretakers, neighbors, and others.

From the fall of 2017 until June 2018, Grewer rented an ohana unit on the victim's property, although he stopped paying rent beginning in January 2018. On June 18, 2018, the day before the victim's murder, the District Court granted the victim summary possession and ordered Grewer to vacate the premises by June 25, 2018.

The next day, on June 19, 2018, Kauai police officers conducted a welfare check after the victim failed to answer phone calls from concerned friends. The police entered the victim's home through a glass sliding door after finding that the deadbolt and doorknob to her front door were locked. Once inside, the police discovered the victim deceased in her wheelchair, covered in blood. During the welfare check, Grewer voluntarily exited the ohana unit he rented to speak with law

enforcement officers.  Police observed fresh scratches on his chest that had not yet scabbed.  Grewer stated he was unable to assist the police in entering the victim's locked house because he did not have the keys to the house.  Yet, the following day, on June 20, 2018, upon executing a search warrant of Grewer's ohana unit rental, law enforcement found a set of keys that opened the doorknob lock and deadbolt on the victim's front door.

The State also introduced multiple items of DNA evidence linking Grewer to the victim's murder.  Law enforcement recovered a pair of bloodstained shorts in Grewer's kitchen, which contained a mixture of Grewer and the victim's DNA.  Forensic analysis also revealed Grewer's DNA underneath the victim's fingernails and on her right-hand fingertip.

Testimony from Dr. Martin Ishikawa, M.D., the medical examiner who conducted an autopsy of the victim, illustrated the severity of the victim's wounds.  Dr. Ishikawa testified that she died from multiple sharp force injuries inflicted with a "single-edged sharp force implement like a knife."  Dr. Ishikawa found stab wounds on the back of the victim's right hand, the palm of her right hand, her right eyelid, under her left eye, on her right leg below the knee, and on her neck.  One of the neck stab wounds was inflicted with enough force to penetrate and fracture the victim's C5 cervical spine.

The victim was stabbed 17 times.  The autopsy also indicated she was alive at the time of the stabbing because blood was found in her right lung.  Given these observations, Dr. Ishikawa classified victim's death as a homicide.

Grewer testified as a witness for his defense.  He testified that on the day of the incident, he walked his dog at Poipu beach from approximately 5:00am to 8:00am, returned to the ohana unit to watch television and take a nap until he woke up to the police at his door around 4:00pm.  Grewer also testified that earlier that week he was wearing the bloodied shorts later found in his kitchen when he crashed his car and "ripped up [his] forearms pretty drastically."  Grewer further explained that the fresh scratches on his chest were from an incident a few days prior where he crawled underneath a fence to access an AT&T store shortly before closing.

The jury returned a verdict of guilty of second degree murder.  The jury further found beyond a reasonable doubt that the State proved the necessary conditions for extended and enhanced sentencing based on the severity of the crime and the victim's age.  Accordingly, the circuit court sentenced Grewer to life imprisonment without the possibility of parole.

**B.   Appellate Proceedings**

Grewer and the State cross-appealed.[5]  Relevant to the issue presented before this court, Grewer sought to vacate his conviction and sentence, arguing that Prospective Juror 20's comments violated his right to a fair trial by an impartial jury.[6]  Grewer argued that the circuit court's inquiry into the impartiality of the jury following Prospective Juror 20's comments was insufficient, and that absent a sufficient inquiry, the record could not support a determination that the comments were harmless beyond a reasonable doubt.

In a 2-1 Summary Disposition Order, the ICA majority agreed.  It vacated Grewer's conviction and sentence and remanded the case to the circuit court for a new trial.  The majority concluded Prospective Juror 20's courthouse hallway statements undermined fundamental principles of the right to a fair trial and an impartial jury, specifically the presumption of innocence and burden of proof.  Citing State v. Chin, the ICA majority further concluded that the nature of Prospective Juror 20's comments triggered a rebuttable presumption of prejudice, which required the circuit court to "further investigate the

---

[5]     The issues raised in the State's cross-appeal to the ICA are not before this court.

[6]     Other issues raised by Grewer, which are not before this court, challenged the sufficiency of evidence supporting his extended and enhanced sentencing under HRS §§ 706-662(5) and -657.

totality of circumstances surrounding the alleged deprivation to determine its impact on jury impartiality." 135 Hawai'i 437, 445, 353 P.3d 979, 987 (2015) (citation omitted).

Therefore, the ICA majority held that the circuit court's inquiry was inadequate in assessing how many prospective or empaneled jurors actually heard the comments, and thus, was an abuse of the circuit court's discretion. The majority also characterized the circuit court's curative instruction as "general" and "hypothetically phrased."

The dissent disagreed, characterizing the majority's decision as "erod[ing] the discretion of our trial courts and ignor[ing] the totality of circumstances." The dissent opined that the circuit court did not abuse its discretion when it conducted an inquiry into the prejudicial impact of Prospective Juror 20's comments and subsequently instructed the jury pool.

The State sought certiorari review, which we granted.

### III. STANDARD OF REVIEW

We review the circuit court's inquiry into the impact of Prospective Juror 20's comments and subsequent denial of Grewer's motion for mistrial for abuse of discretion. See State v. Furutani, 76 Hawai'i 172, 180, 873 P.2d 51, 59 (1994). "Where the existence of an outside influence such as juror misconduct is brought to the attention of the trial court, the court must ascertain the extent of the influence and then, in its sound

13

discretion, take appropriate measures." Chin, 135 Hawai'i at 439, 353 P.3d at 981. "The trial court abuses its discretion when it clearly exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party litigant." State v. Bailey, 126 Hawai'i 383, 398, 271 P.3d 1142, 1157 (2012) (citations omitted).

## IV. DISCUSSION

On certiorari to this court, the State argues that the circuit court did not abuse its discretion because it properly removed Prospective Juror 20 following an adequate inquiry into the circumstances surrounding her comments, and gave a sufficient curative instruction to the rest of the prospective jurors. The State further contends that any prejudice that may have resulted from Prospective Juror 20's comments was harmless beyond a reasonable doubt. We agree, and hold the circuit court did not abuse its discretion here.

## A. The Circuit Court Did Not Abuse its Discretion in Denying Grewer's Motion for Mistrial

Article I, section 14 of the Hawai'i Constitution guarantees a criminal defendant's right to a "public trial by an impartial jury." We have described this right as "a basic protection of the individual in a criminal case." State v. Pokini, 55 Haw. 640, 641, 526 P.2d 94, 99 (1974). While a new trial must be granted if any juror was not impartial, "not all

14

juror misconduct necessarily dictates the granting of a new trial." State v. Kim, 103 Hawai'i 285, 291, 81 P.3d 1200, 1206 (2003). When determining if jury misconduct deprives a criminal defendant of an impartial jury, the following "conceptual framework" guides our analysis:

> [W]hen a defendant in a criminal case claims a deprivation of the right to a fair trial by an impartial jury, the initial step for the trial court to take is to determine whether the nature of the alleged deprivation rises to the level of being substantially prejudicial. If it does not rise to such a level, the trial court is under no duty to interrogate the jury. And whether it does rise to the level of substantial prejudice is ordinarily a question committed to the trial court's discretion.
>
> Where the trial court does determine that such alleged deprivation is of a nature which could substantially prejudice the defendant's right to a fair trial, a rebuttable presumption of prejudice is raised. The trial judge is then duty bound to further investigate the totality of circumstances surrounding the alleged deprivation to determine its impact on jury impartiality. The standard to be applied in overcoming such a presumption is that the alleged deprivation must be proved harmless beyond a reasonable doubt.
>
> The defendant bears the initial burden of making a prima facie showing of a deprivation that could substantially prejudice his or her right to a fair trial by an impartial jury. But once a rebuttable presumption of prejudice is raised, the burden of proving harmlessness falls squarely on the prosecution.

Bailey, 126 Hawai'i at 399-400, 271 P.3d at 1158-59 (citation omitted) (emphasis added).

Under this framework, trial courts have wide latitude to assess the nature of alleged juror misconduct and its prejudicial impact on a defendant's right to a fair trial. When a claim of juror misconduct arises, trial courts first determine whether the alleged deprivation is of a substantially

15

prejudicial nature. Id. In making this determination, trial courts look to the "general nature" of the alleged misconduct and whether it "could" substantially prejudice the defendant. Chin, 135 Hawaiʻi at 446, 353 P.3d at 988. Whether a juror's alleged misconduct "could" substantially prejudice the defendant is a question left to the trial court's discretion. Id. at 445, 353 P.3d at 987; see also State v. Taylor, 324 S.W.2d 643, 648 (Mo. 1959) ("The trial court is in a much better position than this court to evaluate the effect upon others of such an unexpected outburst and the handling of the matter must be [e]ntrusted largely to its discretion.").

1. **Even if the circuit court did not expressly determine whether Prospective Juror 20's comments were substantially prejudicial, its inquiry was sufficient**

Although the record is silent as to whether the circuit court determined if Prospective Juror 20's comments could substantially prejudice Grewer's right to trial by an impartial jury, the circuit court's inquiry adequately revealed the prejudicial impact of Prospective Juror 20's comments was minimal, if any.

The circuit court's inquiry uncovered the following circumstances during the mid-morning recess from jury selection for Grewer's trial. Prospective Juror 20 admitted she loudly told the bailiff, "I wish I didn't have to be here" and that she was "freaking out" and "ha[d] so much going on" as a single

parent and caretaker to her uncle, who had recently been released from the hospital. Prospective Juror 22 further relayed that Prospective Juror 20 "kept saying, I don't want to be here, I don't want to be here," while Prospective Juror 3 heard Prospective Juror 20 say that "[s]he didn't want to be here." On their face, none of these statements can be reasonably construed as potentially prejudicial to Grewer's right to a fair trial.

However, Prospective Juror 20 made additional statements that could be construed as implicating Grewer's guilt. For example, Prospective Juror 20 noted, "I get chicken skin, and I don't want to be – any involvement in any of this[,]" and confirmed she told Prospective Juror 22 and Prospective Juror 48 that she "already had my opinion about it." Prospective Juror 48 heard Prospective Juror 20 state "that she didn't want to be near someone like [Grewer]." Prospective Juror 3 heard Prospective Juror 20 say, "I think it was weird being in this room with him[.]"

Once aware of Prospective Juror 20's hallway statements, the circuit court immediately questioned Prospective Juror 20, who disclosed, in addition to the bailiff, she interacted with Prospective Juror 22 and Prospective Juror 48. The circuit court then examined Prospective Juror 22 and Prospective Juror 48, who identified Prospective Juror 3 as

17

another individual who interacted with Prospective Juror 20 during the recess.  All three characterized Prospective Juror 20's comments as expressing her desire to leave the courthouse.

The circuit court's investigation also revealed that all three prospective jurors paid little attention to Prospective Juror 20's comments or otherwise did not take her statements that "it was weird being in this room with [Grewer]," that Grewer "looked guilty," and that "she didn't want to be near someone like that" seriously.  When asked if Prospective Juror 20 said anything other than "she didn't want to be near someone like that," Prospective Juror 48 replied, "[t]hat's about all I really paid attention to."  Similarly, Prospective Juror 3 perceived Prospective Juror 20's comments as "goofball type talk that you don't listen to but you catch parts of it, and the parts were – didn't sound real bright about being in this room[.]"  Finally, when asked if Prospective Juror 20's comments would affect his perception on Grewer's case, Prospective Juror 3 replied, "Oh, god, no."

Although the circuit court did not expressly determine the prejudicial nature of Prospective Juror 20's comments, under these circumstances where the three prospective jurors perceived her comments as voicing a desire to be excused from service, they were likely not of a nature that could substantially prejudice Grewer.  Further, neither Prospective Juror 22,

18

Prospective Juror 48, nor Prospective Juror 3 were immediately excused following the voir dire, suggesting the circuit court implicitly determined that the comments were not of a substantially prejudicial nature.

This court has not previously considered potential jury impartiality arising from prospective jurors' comments about the defendant during jury selection.[7] See, e.g., Chin, 135 Hawaiʻi at 441, 353 P.3d at 983 (seeking employment, jury foreperson gave business card to testifying witness in men's bathroom during trial); Bailey, 126 Hawaiʻi at 393, 271 P.3d at 1152 (during deliberations juror disclosed inadmissible information of defendant's prior criminal conviction). However, other appellate courts, faced with similar careless comments from prospective jurors, have upheld defendants' convictions when the trial court conducts a sufficient inquiry into the nature of the comments and provides instructions to alleviate any prejudice.

---

[7] Furutani is the sole juror misconduct case this court previously considered that arose from alleged juror misconduct during jury selection. There, the alleged misconduct centered around prospective jurors' nondisclosure of "bias against defendants who failed to testify or present evidence of their innocence." Id. at 185, 873 P.2d at 64. This court adopted the Colorado Supreme Court's approach and held that "[u]nder some circumstances a juror's nondisclosure of information during jury selection may be grounds for a new trial." Id. at 182, 873 P.2d at 61 (quoting People v. Dunoyair, 660 P.2d 890, 895 (Colo. 1983). Jurors' nondisclosure of information is not relevant to the circumstances here surrounding Prospective Juror 20's alleged misconduct during jury selection.

For example, the nature of Prospective Juror 20's comments are analogous to comments prospective jurors made in a Missouri kidnapping and rape trial. State v. Williams, 630 S.W.2d 117, 119 (Mo. Ct. App. 1981). There, two prospective jurors disclosed their preconceived opinion of the defendant's guilt and their repugnance to the underlying offense during voir dire. Id. The trial court instructed the remaining prospective jurors to disregard anything they had heard or read elsewhere, and to solely base their decision on the evidence and law presented. Id. Considering the trial court's curative instruction and the nature of the expressed opinions during voir dire, a Missouri appellate court concluded that the two prospective jurors' comments were not "so inflammatory and prejudicial that the trial court abused its discretion in refusing to quash the entire panel." Id. Here, like in Williams, once the circuit court learned that Prospective Juror 20 disclosed her preconceived opinion of Grewer's guilt to three other prospective jurors, the circuit court promptly inquired into the nature of those comments and thereafter gave a curative instruction to the remaining prospective jurors.

Careless comments during jury selection – before the jury is empaneled, before any evidence is presented, and before jurors begin their deliberations – generally pose a lesser threat to criminal defendants' right to a fair trial compared to

20

alleged juror misconduct during trial or deliberations. Cf. Bailey, 126 Hawai'i at 393, 271 P.3d at 1152 (during deliberations, an empaneled juror shared that the defendant was previously accused of another crime, leading to a brief discussion concerning the defendant's prior criminal record, which was excluded from evidence).

While prospective jurors' statements about the defendant's guilt could be prejudicial in some contexts – for example, if a juror expresses personal familiarity with the case or parties – those are not the circumstances here. We underscore it is within the discretion of the trial court to tailor its inquiry to the specific context in which the comments arose. Here, we conclude that the circuit court's inquiry was appropriately tailored to assess the prejudicial nature of Prospective Juror 20's comments that Grewer "looked guilty." Therefore, it did not abuse its discretion when it determined that Prospective Juror 20's hallway comments were self-serving and made in an attempt to be excused from the jury after questioning the bailiff and three other prospective jurors who interacted with Prospective Juror 20 during recess. Nor did the circuit court abuse its discretion when it opted to provide a curative instruction rather than individually question the remaining prospective jurors.

2. **Given the nature of Prospective Juror 20's comments, the curative instruction was sufficient to cure any prejudice**

Given the totality of circumstances surrounding Prospective Juror 20's comments and the circuit court's specific curative instruction to "disregard whatever another prospective juror said about this case at this time," we also conclude that the circuit court's curative instructions were sufficient to cure any potential prejudice against Grewer.

In other contexts, we have weighed the sufficiency of the curative instruction against the prejudicial nature of the misconduct or improper evidence. For example, in State v. Loa, this court concluded the trial court did not abuse its discretion when it denied the defendant's motion for a mistrial following improper witness testimony that the defendant and his friends had just been released from prison. 83 Hawai‘i 335, 354, 926 P.2d 1258, 1277 (1996). As we explained, "in light of the overwhelming evidence of [the defendant]'s guilt, whatever minimal prejudice may have resulted from the complainant's revelation of what one of her unidentified attackers had stated about his past criminality was adequately cured by the trial court's immediate cautionary instruction to the jury." Id. at 353, 926 P.2d at 1276.

Conversely, in State v. Hamala, the improper evidence at issue was a witness who testified that the defendant

previously told him that he had shot two people. 73 Haw. 289, 291, 834 P.2d 275, 276 (1992), overruled on other grounds by State v. Rogan, 91 Hawai'i 405, 423 n.10, 984 P.2d 1231, 1249 n.10 (1999). The trial court ruled the testimony inadmissible and instructed the jury to disregard it, but denied the defendant's motion for a mistrial. Id. at 291, 834 P.3d at 276. On appeal, the ICA ruled the curative instruction was sufficient, despite the testimony's highly prejudicial nature, in light of the overwhelming evidence of the defendant's guilt. Id. at 291-92, 834 P.3d at 276. We disagreed, explaining that "the testimony regarding prior bad acts elicited by the prosecutor was highly prejudicial and that no curative instruction could suffice." Id.

Here, only minimal prejudice could have resulted from Prospective Juror 20's careless comments. First, Prospective Juror 20 was excused following the circuit court's investigation into the comments. Second, the comments were only heard by three prospective jurors, none of whom were empaneled. Third, the comments were understood by those that heard them as an attempt to avoid jury duty and did not impact their impartiality.

Further, the circuit court instructed the jury: "The other thing that I want to tell you is if you heard a juror talking – a prospective juror talking about this case, I would

instruct you to disregard whatever another prospective juror said about this case at this time."  This prompt curative instruction was given immediately after Prospective Juror 20 was excused and the remaining jury pool reconvened such that it "minimized or eliminated the prejudicial effect," if any, of Prospective Juror 20's comments.  Cf. State v. Pasene, 144 Hawaiʻi 339, 365, 439 P.3d 864, 890 (2019) (noting several occasions where the trial court failed to issue necessary curative instructions).  The circuit court also gave a second curative instruction later that same day, reminding jurors that their decision must be based only on the evidence received in the courtroom and to disregard statements from other prospective jurors.

Considering the minimal potential for prejudice, the nature of the curative instruction, the promptness with which it was given, and the fact that it was later reiterated to the jury that same day, we conclude the circuit court's prompt curative instruction was sufficient under the totality of the circumstances.

Our conclusion here is consistent with the approach adopted by courts in other jurisdictions that have considered the issue.  See, e.g., State v. Governor, 331 So.2d 443, 447-48 (La. 1976); State v. Montano, 667 P.2d 1320, 1322 (Ariz. 1983) (en banc); Frances v. State, 316 N.E.2d 364, 366 (Ind. 1974);

24

see also John H. Derrick, <u>Cure of Prejudice Resulting From Statement by Prospective Juror During Voir Dire, In Presence of Other Prospective Jurors, as to Defendant's Guilt</u>, 50 A.L.R. 4th 969 § 5[a] (1986) (summarizing cases where prospective juror statements were later cured).  In <u>Governor</u>, a case where a prospective juror stated he did not believe the complaining witness would lie, the Louisiana Supreme Court held that the trial court's admonition to the jurors "to disregard anything said by [the prospective juror] concerning his opinion of the guilt or innocence of the accused," was sufficient to "cure[] whatever harmful effect [the prospective juror]'s declaration may have had on the other jurors."  331 So.2d at 447-48.  Similarly, in <u>Montano</u>, the Arizona Supreme Court held that precautions such as instructing the jury that their factual determinations were to be based solely upon the evidence presented and that statements by other prospective jurors must be disregarded "minimized any effect that the juror's statement could have had on the remainder of the panel."  667 P.2d at 1322.  Likewise, in <u>Frances</u>, the Indiana Supreme Court also declined to overrule a trial court's denial of the defendant's motion for a mistrial particularly in light of the curative action taken by the circuit court to instruct jurors to "disregard any statements made by the prospective juror" after a

25

prospective juror opined that the defendant was guilty during voir dire. 316 N.E.2d at 366.

Based on the foregoing, we conclude that the circuit court did not abuse its discretion when it denied Grewer's motion for a mistrial because, under the totality of the circumstances, the circuit court's prompt jury instruction was sufficient to cure any minimal prejudice that may have resulted from Prospective Juror 20's comments.

**B.  Overwhelming Evidence of Grewer's Guilt Outweighed Any Prejudice Resulting from Prospective Juror 20's Comments**

Even if a rebuttable presumption was raised by Prospective Juror 20's comments, the State introduced overwhelming evidence of Grewer's guilt that rendered any prejudice harmless beyond a reasonable doubt.[8] See State v. Estrada, 69 Haw. 204, 221, 738 P.2d 812, 824 (1987) (noting that where there is "overwhelming, uncontradicted evidence of guilt," error can be harmless beyond a reasonable doubt).

Notably, Grewer's conviction did not solely depend upon the credibility of witness testimony. Cf. State v. Underwood, 142 Hawaiʻi 317, 329, 418 P.3d 658, 670 (2018) ("When

---

[8]    "The trial court's investigation of the totality of the circumstances is a necessary prerequisite to finding that the misconduct was harmless beyond a reasonable doubt." Chin, 135 Hawaiʻi at 448, 353 P.3d at 990 (citation omitted). Here, the circuit court investigated the totality of circumstances, fulfilling the necessary prerequisite to determine whether Prospective Juror 20's comments were harmless beyond a reasonable doubt.

a conviction is largely dependent on a jury's determination as to the credibility of a complainant's testimony, we have held that the evidence of the offense is not so 'overwhelming' that it renders the prosecutor's improper statements harmless beyond a reasonable doubt."). In addition to witness testimony and circumstantial evidence, forensic DNA evidence found on Grewer's bloodied shorts and underneath the victim's fingernails linking Grewer to the victim's murder was adduced at trial.

Further, the evidence presented here is distinguishable from prior juror misconduct cases where we concluded that the misconduct was not harmless beyond a reasonable doubt. E.g., State v Pitts, 146 Hawai'i 120, 133, 456 P.3d 484, 497 (2019); Bailey, 126 Hawai'i at 401-02, 271 P.3d at 1160-61.

For example, in Pitts, an attempted murder case where the defense focused on the lack of evidence indicating that blood was found on his person or clothing, we concluded that juror misconduct was not harmless beyond a reasonable doubt. 146 Hawai'i at 133-34, 456 P.3d at 497-98. There, the jury during its deliberations conducted an improper examination of the defendant's clothing to search for evidence of blood, and as a result discovered "small drops," which some jurors determined "must be blood." Id. at 131, 456 P.3d at 495. Because "the nonexistence of the evidence of blood on the [defendant's]

27

clothing was essential to his defense," we concluded that the discovery could have tainted the jury's impartiality.  Id. at 133-34, 138, 456 P.3d at 497-98, 502.  In contrast, here, the credibility of Grewer's defense that his bloody shorts were from crashing his car where he "ripped up [his] forearms pretty drastically" was in no way implicated by Prospective Juror 20 stating her desire to be excused from service or her comments that Grewer "looked guilty."

In Bailey, a case involving the sexual assault of a minor where there were "arguable inconsistencies between the testimony of [the complaining witness] and the physical evidence," we concluded that juror misconduct required vacatur. 126 Hawaiʻi at 401, 406, 271 P.3d at 1160, 1165.  There, during deliberations, a juror made "statements concern[ing] a highly inflammatory and prejudicial prior crime that had been ruled inadmissible" in front of the other jurors.  Id at 402, 271 P.3d at 1161.  We concluded that such misconduct was not harmless beyond a reasonable doubt and the trial court erred when it denied the defendant's motion for a new trial.  Id. at 403, 271 P.3d at 1162.  In contrast, here, other than Grewer's own testimony, there were no significant inconsistencies between witness testimony and the physical evidence linking Grewer to the victim's murder.

28

Rather, in addition to witness testimony underscoring Grewer's motive to kill upon learning the victim obtained an eviction order against him and the medical examiner's testimony illustrating the severity of the victim's stab wounds, the State presented evidence demonstrating that (1) a mixture of Grewer and the victim's DNA was present on bloodied shorts found in Grewer's kitchen, (2) Grewer's DNA was found on fingernails clipped from the victim's hands, and (3) the victim's front door and deadbolt keys were found on Grewer's couch. Considering this "overwhelming, uncontradicted evidence of [Grewer's] guilt" and the minimal prejudice Prospective Juror 20's comments that Grewer "looked guilty" could have had on the empaneled jury, we conclude there is no reasonable possibility Prospective Juror 20's comments contributed to Grewer's conviction. See Estrada, 69 Haw. at 221, 738 P.2d at 824.

## V. CONCLUSION

For the foregoing reasons, we reverse the ICA's October 8, 2024 Judgment on Appeal and affirm the Circuit Court's October 19, 2021 Judgment of Conviction and Sentence.

| | |
|---|---|
| Tracy Murakami<br>for petitioner<br>State of Hawai'i | /s/ Mark E. Recktenwald<br><br>/s/ Sabrina S. McKenna |
| Melinda K. Mendes<br>for respondent<br>Peter Grewer | /s/ Todd W. Eddins<br><br>/s/ Lisa M. Ginoza |
| | /s/ Vladimir P. Devens |

29